PoPEOPLE, INC., Plaintiff-Appellant,

v.

LABOR AND INDUSTRIAL RELATIONS COMMISSION and Division of Employment Security, Defendants-Respondents.

No. 74070.

Supreme Court of Missouri,
En Banc.

April 21, 1992.

As Modified on Denial of Rehearing
June 2, 1992.

James O. Swaney, Jr., Independence, for plaintiff-appellant.

William L. Webster, Atty. Gen., Victorine Mahon, Sandy Bowers, Asst. Attys. Gen., Jefferson City, for defendants-respondents.

THOMAS, Judge.

PoPeople, Inc., appeals from a decision of the Circuit Court of Cole County affirming the decision of the Labor and Industrial Relations Commission regarding the Missouri employment security laws. The Commission decided that PoPeople is not the successor to American Folks, Inc., under § 288.110, RSMo 1986, and, therefore, not entitled to favorable contribution rates for unemployment compensation tax. This Court has exclusive appellate jurisdiction because PoPeople challenges the validity of § 288.110 as construed thus far in this litigation. The judgment is affirmed.

PoPeople, Inc., a Missouri corporation, acquired two restaurant locations from American Folks, Inc., on December 21, 1987. The restaurants were located in Independence, Missouri, and Kansas City, Missouri.

Section 288.110 specifies an employer that acquires substantially all of the business of another employer will be treated as the successor in interest to the predecessor employer and to what extent, if any, the successor in interest will receive the benefits and be subject to the burdens of the predecessor employer in relation to the unemployment compensation matters. Section 288.110 provides, in pertinent part:

> Any individual, type of organization or employing unit which has acquired substantially all of the business of an employer, excepting in any such case any assets retained by such employer incident to the liquidation of his obligations, and in respect to which the division finds that immediately after such change such business of the predecessor employer is continued without interruption solely by the successor, shall stand in the position of such predecessor employer in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual payrolls, and lia-

bility for current or delinquent contributions, interest and penalties....

On February 6, 1986, American Folks filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. This bankruptcy was pending when PoPeople acquired the two restaurants, and American Folks, by written motion, asked the bankruptcy court to approve the six-page sales agreement providing for the sale of the two restaurants. On December 18, 1987, the bankruptcy court issued its order granting American Folks the right to enter into and approving the purchase agreement, which provided, among other things, that "[a]ll taxes and accrued expenses are to be prorated between Buyer and Debtor as of the closing date; ...." The closing date was December 21, 1987, and PoPeople, therefore, took the position that it was not liable for approximately $13,385.00 of unpaid unemployment contributions for the two restaurants that had accrued prior to the closing date. However, the Missouri Division of Employment Security (Division) made an administrative determination that PoPeople acquired and continued substantially all of the business of American Folks, stood in the position of American Folks pursuant to § 288.110, and therefore was liable for all of the unpaid contributions. This issue was referred to the Appeals Tribunal of the Department of Labor and Industrial Relations and, on February 23, 1989, it heard the appeal by telephone conference. The Appeals Tribunal issued its decision on July 21, 1989, reversing the Division's administrative "successorship" determination and held that PoPeople would not be liable for the prior unpaid contributions and that PoPeople shall not stand in the position of American Folks in all respects as provided under § 288.110. In its holding, the Appeals Tribunal referred to the authority of the bankruptcy court to sell the two restaurants and its approval of the purchase agreement. The decision of the Appeals Tribunal further stated:

In this case, the "closing date" in question was December 21, 1987, and it there-fore follows that any delinquent contributions which became payable during time periods pre-dating December 21, 1987, remained obligations of the debtor-in-possession, American Folks, Inc., and did *not* transfer to the appellant along with the appellant's acquisition of certain assets purchased from the debtor-in-possession in the bankruptcy proceedings. According to this judicially approved sale of assets made pursuant to federal law, the appellant, PoPeople, Inc., shall *not* succeed to the liability for unpaid contributions which accrued prior to December 21, 1987. As to those delinquent contributions, the appellant shall *not* stand in the position of American Folks, Inc., by operation of *federal* law....

It is found by the Appeals Tribunal that the appellant argues correctly that the conflicting laws of the State of Missouri must yield to the paramount federal statutory authority by reason of the "Supremacy Clause" contained in Article VI, section 2 of the United States Constitution. Because the Bankruptcy Court Order in this case refers to the proration, as of the closing date of December 21, 1987, of *"[a]ll taxes"*, all of the other elements of "successorship" under Section 288.-110, RSMo, which relate to the pre-sale contribution and benefit experience of American Folks, Inc., must likewise be restricted in their application to the appellant so as not to conflict with that Bankruptcy Court Order. Accordingly, it is found that PoPeople, Inc., shall *not* stand in the position of American Folks, Inc., in all respects as provided under Section 288.110, RSMo 1986.

Decision of Appeals Tribunal in Appeal No. E–454–88, dated July 21, 1989, pp. 7 and 8. PoPeople did not appeal this decision of the Appeals Tribunal and, therefore, it became final on August 5, 1989.

The present controversy commenced on September 14, 1989, when the Division mailed a notice of liability to PoPeople. The notice established PoPeople's contribution rates as 2.70 percent for 1988 and 2.511 percent for 1989.[1] The notice demon-

---

1. The Division chose 2.70 percent as PoPeople's    contribution rate for 1988 pursuant to § 288.-

strated that the Division had administratively determined, based upon the Appeals Tribunal's first decision that PoPeople was not a "successor" to American Folks and that PoPeople was a "new employer" subject to the Missouri Employment Security Law, effective January 1, 1988. The notice also assigned a different account number to PoPeople.

On September 22, 1989, PoPeople appealed the determination of its contribution rates. A hearing was held before the Appeals Tribunal on November 28, 1989. PoPeople contended that it was still entitled to the lower, more favorable contribution rates as a successor to American Folks in all respects except that it was not liable for delinquent contributions for which American Folks remained liable pursuant to the bankruptcy court order.

On January 3, 1990, the Appeals Tribunal affirmed the decision to impose the higher contribution rates on PoPeople. The Appeals Tribunal concluded that the various aspects of successorship cannot be separated and that a successor must inherit the entire package of burdens and benefits from its predecessor. PoPeople then sought review with the Labor and Industrial Relations Commission (Commission). On February 21, 1990, the Commission affirmed the decision of the Appeals Tribunal. Thereafter, PoPeople appealed to the Circuit Court of Cole County, which affirmed the decision of the Commission on July 2, 1991.

PoPeople now seeks review in this Court. PoPeople argues that it is entitled to have the benefits of the statute (its predecessor's favorable benefit experience and resulting lower contribution rates) without being required to accept the burden of the statute (liability for American Folks' delinquent contributions). PoPeople contends that it is entitled to the benefits because it is, in fact, the successor in interest to American Folks but that it is not liable for the unpaid contributions of American Folks

because the Missouri statute (§ 288.110) must yield to the paramount federal statutory authority by reason of the "Supremacy Clause" contained in Article VI, Section 2, of the United States Constitution.

■ Surprisingly, the Division does not argue the converse of PoPeople's position, *i.e.* it does not, in its brief or in its argument, take the position that the statute intends an all-or-nothing interpretation, which requires that a successor in interest take on both the burdens and the benefits of its predecessor. The Division took what some might describe as a "head-in-the-sand" approach by refusing to either brief or argue the substantive issue of the interpretation of the statute and stubbornly maintains that the Appeals Tribunal in the present case did not consider the issue of how the statute should be interpreted. Rather, the Division maintains that in the first appeal the Appeals Tribunal held that an all-or-nothing interpretation is required, that PoPeople did not appeal from this decision, and that this holding, in effect, constitutes *res judicata* on the statutory interpretation issue. Reference to the Appeals Tribunal's opinion, which discusses the all-or-nothing interpretation issue for five pages, would cause a neutral observer to wonder if the Division and the other participants, including this Court, are reviewing the same opinion. The first decision of the Appeals Tribunal does contain a sentence that could be read to require an all-or-nothing interpretation. *See* the quotation, *supra*, from decision of Appeals Tribunal in Appeal No. E–454–88. However, the issue of carrying over the favorable contribution rates from American Folks to PoPeople was not at issue in the earlier decision. Thus, PoPeople could not have appealed from that portion of the earlier decision because the Division had not issued a notice of liability so as to put the contribution rates at issue in that appeal.

Moreover, the most cursory review of the opinion of the Appeals Tribunal in the

090.2, RSMo Supp.1991, which applies to "new" employers. In accordance with § 288.122, RSMo Supp.1991, the Division established 2.511 percent as PoPeople's contribution rate for

1989. Section 288.122 allows for a seven-percent reduction in the percentage of the contribution rate under certain circumstances.

present appeal demonstrates beyond question that in the present case the Appeals Tribunal considered the substantive issue of how the statute should be interpreted and did not decide the case based on *res judicata.* Consider the following quoted from the Appeal Tribunal's opinion below:

PoPeople, Inc., has appealed from the Division's administrative determination of its contribution rates for calendar years 1988 and 1989, based upon its belief that it is still entitled to the lower, more favorable contribution rates and account experience of American Folks, Inc., notwithstanding the Appeals Tribunal's decision reversing the Division's "successorship" determination. While the appellant still continues to assert, as it did during its appeal of the Division's "successorship" determination, that it should not stand in the position of American Folks, Inc., with regard to that company's liability for current or delinquent contributions, interest and penalties, the appellant nevertheless contends that it should be allowed the benefit of that prior owner's actual contribution and benefit experience and annual payrolls, as reflected in the assigned contribution rates for calendar years 1988 and 1989.

\* \* \* \* \* \*

Essentially, the appellant urges the Appeals Tribunal to find that the various aspects of employer liability which are transferred from a predecessor employer to a successor employer by operation of RSMo. Section 288.110, may be segregated from one another and separated out. This view, if upheld, would allow a subsequent operator of a business to inherit some, but not all, of the various aspects of "successorship".

\* \* \* \* \* \*

Because the Appeals Tribunal is not persuaded that the Law will allow for the "severability" of the various aspects of successorship listed in Section 288.110, it is held that the appellant's prayer for the lower, more favorable contribution rates which would have been assigned to American Folks, Inc., for calendar years 1988 and 1989, must be rejected.

As lengthy as the foregoing quotation is, we have omitted several pages of the Appeals Tribunal's opinion discussing further aspects of this issue.

Despite the express language of the holding of the Appeals Tribunal, the Division maintains that this appeal does not involve the issue of the interpretation of the statute. Its position is that PoPeople is a new employer and that the only question is whether the Division properly followed the statutes and regulations and assessed the proper contribution rate for a new employer. This approach renders the real issue in the present appeal a non-issue.

■ PoPeople argues in its Reply Brief that the Division's failure to brief and argue the obvious issue in dispute amounts to a default in the nature of failing to file a responsive pleading to a petition. While such a conclusion is tempting, where an appellant files a brief raising an appropriate issue, the Court is obligated to consider the substance of the claim. Failure of a respondent to brief an appropriate issue is a practice repeatedly condemned by the courts. It is an imposition upon this Court and leaves us dependent upon the appellant's presentation and our own research. *Scheble v. Missouri Clean Water Commission,* 734 S.W.2d 541, 545 (Mo.App.1987). However, this Court must consider whether § 288.110 may be subjected to a bifurcated interpretation by which, under the present circumstance, an employer may receive the benefits but avoid the burdens of being a successor in interest or whether, on the other hand, the statute calls for the dispensation of the attributes of successorship on an all-or-nothing basis.

■ Although this is a case of first impression regarding the severability of the aspects of successorship listed in § 288.110, the plain meaning of the statute requires that a successor assume *all* of the benefits and burdens of its predecessor. Further, several cases interpreting this section have suggested that the aspects of successorship are not severable. The court of appeals in *Mascom Management, Inc. v. Labor and Industrial Relations Commis-*

*sion,* 586 S.W.2d 802, 806 (Mo.App.1979), found that the legislature intended to make "the question of successorship turn upon the actuality of a transfer of *benefits and burdens* of a prior business." (Emphasis added.) The *Mascom* court based this finding on three prior cases: *Union–May–Stern Co. v. Industrial Commission,* 273 S.W.2d 766 (Mo.App.1954), *Chief Freight Lines Co. v. Industrial Commission,* 366 S.W.2d 48 (Mo.App.1963), and *Ksd/Ksd–TV, Inc. v. Labor and Industrial Relations Commission,* 562 S.W.2d 346 (Mo. banc 1978). The *Mascom* court further explained:

> the statute protects the basic integrity of the employment security system by providing a means of collection of delinquent accounts when the business enterprise is ongoing and the *benefits and burdens* have been assumed by another. So likewise, when the shoe is on the other foot and the transferee is asserting a right to the lower rate established by the transferor, if the transferee has assumed the *benefits and burdens* of the prior operation in whatever form and however conveyed, it is equitable and in furtherance of the statutory purpose to stabilize conditions of employment to permit the transferee to obtain the lower rate of contribution and any value in the predecessor's account. This is done for the reason that the whole purpose of the system is to provide continuity and stability of employment. The incentive to a transferee, to continue uninterrupted and without decrease in employment the enterprise transferred, is the expectation of the lowered rate of contribution. Put another way, interpretation of the statute which emphasizes the necessity for stability in employment and the protection of the State's interest in collection of delinquent accounts, and which is based upon a realistic appraisal of the business situation, accomplishes the basic legislative goals.

(Emphasis added.) *Mascom,* 586 S.W.2d at 806.

In *Mascom,* Mascom Management, Inc., merely leased the abandoned premises that Washington and Twelfth Corporation had previously operated; there was no contract or transfer of assets, benefits or burdens between Mascom and Washington and Twelfth. The court of appeals held that Mascom was not a successor to Washington and Twelfth. The court concluded that "absent an assumption of the burdens of [the predecessor] and the prospective benefits, no one could have claimed the right to a favorable rate had one existed." *Id.* at 807.

Consistent with the language of the court in *Mascom,* we adopt the "all-or-nothing" construction of § 288.110. In other words, if a successor receives the favorable aspects of successorship, it must pay for them by also assuming the unfavorable aspects. Any other reading of § 288.110 would be inconsistent with the statutory purpose and would allow a successor to assume some, but not all, of the various aspects of successorship listed in the statute.

We hold that § 288.110 does not allow the aspects of successorship to be severed. Therefore, because PoPeople did not assume the burdens of American Folks, it is not a successor as contemplated by § 288.-110 and may not receive the benefit of the lower, more favorable contribution rates.

■ We will now examine PoPeople's constitutional issues. First, PoPeople asserts that construing § 288.110 to deny it the favorable contribution rates violates both procedural and substantive due process under the Due Process Clauses of Article I, Section 10 of the Missouri Constitution and the Fourteenth Amendment of the United States Constitution. In its procedural due process argument, PoPeople contends that the decisions below place an improper burden of proof upon PoPeople to show specifically that in this particular circumstance that the favorable contribution rates of its predecessor would enhance the employment security of the workers. The opinions below did not turn upon nor even require any showing as to whether the use of the favorable contribution rates in this particular case would enhance, maintain or be detrimental to the employment security

of the workers. To base the interpretation of the statute, as an all or nothing statute, on the specific financial data applicable to any particular transaction would result in interpreting the statute, which is obviously general on its face, to mean one thing in one circumstance and something else in another. The decisions below did not require and were not based upon such a showing; PoPeople's procedural due process argument is without merit.

■ PoPeople also claims in its substantive due process argument, that the statute, as construed, has no rational relationship to a legitimate state interest. To argue that the state has no legitimate interest in the formulation of a consistent approach to collecting unemployment contributions in the circumstances of the transfer and continuation of a business is, itself, an irrational contention. The State obviously has a legitimate interest in protecting employment security (including collecting unpaid contributions), and the legislature enacted § 288.110 as one means of achieving this interest. Therefore, we hold that construing the statute to deny PoPeople the lower, more favorable contribution rates of its predecessor does not violate substantive due process.

■ Second, PoPeople argues that construing § 288.110 so as to deny it the favorable contribution rates violates the Supremacy Clause, Article VI, Clause 2 of the United States Constitution, because it conflicts with the bankruptcy code, and violates the provision requiring uniform bankruptcy laws throughout the United States, Article I, Section 8, Clause 4 of the United States Constitution. PoPeople suggests that such a construction of § 288.110 violates 11 U.S.C. § 525, which protects against discriminatory treatment of bankrupts and associates of bankrupts. PoPeople asserts that § 525 applies to the present case because the Division conditioned the grant of the favorable contribution rates on its assumption of American Folks' burdens and discriminated against it, an associate of a bankrupt, because neither PoPeople nor American Folks paid the dischargeable debt.

Our construction of § 288.110 does not violate either provision of the Constitution.

PoPeople and American Folks executed a purchase agreement that was approved by the bankruptcy court. The agreement provided for a proration of all taxes and accrued expenses between the buyer and the debtor as of the closing date. While PoPeople was free to negotiate such a term, it also remained subject to the requirements of § 288.110. Therefore, we conclude that construing § 288.110 so as to impose the contribution rates of a new employer on PoPeople does not violate the above-cited provisions.

■ Finally, PoPeople argues that the Circuit Court erred in failing to overturn the Commission's refusal to grant its application for a stay or supersedeas under § 288.200, RSMo 1986. The denial of the stay or supersedeas required PoPeople to pay the difference between the favorable contribution rates to which it contended it was entitled and the unfavorable contribution rates which the Division asserted should apply. The difference was approximately $12,000.00. PoPeople alleges that the Commission denied it its property without an opportunity to be heard in violation of the Due Process Clauses of Article I, Section 10, of the Missouri Constitution and the Fourteenth Amendment of the United States Constitution. Section 536.120, RSMo 1986, places the issuance of a stay in the discretion of the agency. The section provides that "[n]o such stay ... shall be granted by a reviewing court without notice, except in cases of threatened irreparable injury." Generally, "mere injuries in terms of money ... necessarily expended in the absence of a stay [does] not form a basis for a conclusion of irreparable injury. 73A C.J.S. *Public Administrative Law and Procedure* § 195 (1983). Common sense dictates this conclusion because if money is paid and later determined not to have been due, it can be refunded with interest. Moreover, even if the stay had been granted so that payment by PoPeople would have been delayed, when the issue was finally determined and PoPeople was required to pay the contribution it would be required to pay interest on the unpaid balance during the time the stay was in place. § 288.150, RSMo 1986. It is conceivable that in very unique circumstances a failure

to stay the payment of money could result in irreparable injury, but PoPeople does not plead facts that could give rise to this possibility in this instance. Thus, PoPeople was not entitled to a stay or supersedeas because its only injury was monetary. Further, Section 536.120 requires the agency to give notice and conduct a hearing only if it grants a stay. PoPeople cites no authority that requires notice and a hearing when the stay is denied. The Circuit Court did not err in refusing to overturn the Commission's refusal to issue PoPeople's application for a stay or supersedeas.

Because § 288.110 requires the assumption of both the benefits and burdens of the predecessor by the successor employer, PoPeople cannot receive the lower, more favorable contribution rates without assuming the liability for the delinquent contributions of American Folks. The judgment is affirmed.

ROBERTSON, C.J., COVINGTON, HOLSTEIN and BENTON, JJ., and RENDLEN and BLACKMAR, Senior Judges, concur.

PRICE, J., not participating because not a member of the Court when the case was submitted.