STATE ex rel. AG PROCESSING, INC., et al., Appellants,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri, Respondent.

No. WD 68727.

Missouri Court of Appeals, Western District.

Nov. 12, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2008.

Application for Transfer Denied Feb. 24, 2009.

David Woodsmall, Kansas City, MO, for appellants.

J. Dale Youngs, Kansas City, MO; Renee Parsons, Kansas City, MO; and Kevin A. Thompson, Jefferson City, MO, for respondent.

Before JAMES M. SMART, JR., P.J., THOMAS H. NEWTON and RONALD R. HOLLIGER, JJ.

JAMES M. SMART, JR., Judge.

AG Processing, Inc. and Sedalia Industrial Energy Users Association were the relators seeking judicial review of a PSC ruling in the circuit court in this case. The relators below (hereafter often collectively referred to as "the Consumers") appeal the circuit court's judgment dismissing their petition for judicial review of the PSC's order of May 25, 2007, for lack of jurisdiction due to lack of finality. Finding no error, we affirm.

## Background

Aquila has approximately 301,000 customers in the affected service territories. In July 2006, Aquila filed proposed tariffs with the PSC designed to implement a general rate increase for retail electrical service in some of its service territories. The proposed tariffs would have increased revenues by approximately $119 million per year, a twenty-two percent increase. Following an evidentiary hearing, the PSC issued a Report and Order on May 17, 2007, with an effective date of May 27. It rejected the proposed tariffs but authorized a rate increase of approximately $53 million annually, which was less than half the increase sought by Aquila. The Consumers filed an application for rehearing as to the Report and Order on May 23.

Aquila then filed revised tariff sheets in order to comply with the PSC's Report and Order. It also filed a motion for expedited consideration.[1] On May 25, 2007, the PSC issued its Order granting expedited treatment, approving certain tariff sheets and rejecting others, with the Order to be effective May 31. The PSC also on May 25 denied all pending motions concerning the tariff sheets.

Thereafter, the Public Counsel and an intervenor each filed an application for rehearing as to the May 17 Report and Order. Aquila also filed an application for rehearing. On May 30, 2007, the Consumers filed an application for rehearing as to the *May 25* Order. The Consumers also filed a motion requesting that the PSC stay the effectiveness of the rates. The next day, May 31, the approved tariff sheets went into effect. Aquila began to charge the higher rates for electric service while the applications for rehearing remained pending.

Two weeks later, on June 14, the Consumers filed their petition in circuit court for a writ of review pursuant to section 386.510.[2] The circuit court ordered the PSC to certify its record and ordered a stay of the PSC proceedings. The circuit court's order for the PSC to "take no further action" in the case did not have the

---

1. Section 393.140(11), RSMo 2000, allows the Commission, for good cause shown, to approve tariffs on less than the thirty days' notice otherwise required by the statute.

2. All statutory references are to the Revised Statutes of Missouri, 2000.

effect of staying or suspending the rate increase itself. The court can, under the terms of section 386.520, stay a rate change on certain conditions, but only when the PSC decision is final and a petition for writ of review has been filed. On June 28, 2007, after briefing and argument, the court issued its judgment dissolving the writ of review and dismissing the Consumers' petition for lack of jurisdiction. Thereafter, the PSC denied all applications for rehearing on July 10, 2007. This was one month and ten days after the new rates had gone into effect.

The Consumers appeal the circuit court's dismissal of their petition.

## Aquila's Motion to Dismiss

■ Following the PSC's denial of the applications for rehearing, the Consumers filed a new petition for writ of review on August 8, 2007. That petition is currently pending before the circuit court. Respondent Aquila contends that the claims in the new petition are nearly identical to those in the dismissed petition that is the subject of this appeal. They argue that as a result of that filing, the issues raised in this appeal are moot, and they move that the appeal be dismissed.

■ A case is moot if the decision would have "no practical effect upon an existent controversy." *State ex rel. County of Jackson v. Mo. Pub. Serv. Comm'n,* 985 S.W.2d 400, 403 (Mo.App.1999). When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed. *State ex rel. Chastain v. City of Kansas City,* 968 S.W.2d 232, 237 (Mo. App.1998). Aquila says the Consumers' filing of the new petition in the circuit court following the PSC's denial of the rehearing applications is such an event. They claim that a ruling by this court is

unnecessary, because "the circuit court is already doing ... that which it would be compelled to do if appellants are successful in this appeal," *i.e.,* determining whether the PSC's orders are "lawful and reasonable." *See* section 386.510.

■ The Consumers say the appeal is not moot, but that even if it is, this court should exercise its discretion to review the matter under an exception to the mootness doctrine. Such an exception exists "[w]here the issue raised is one of general public interest and importance, recurring in nature and will otherwise evade appellate review unless the court exercises its discretionary jurisdiction." *Mo. Cable Television Ass'n v. Mo. Pub. Serv. Comm'n,* 917 S.W.2d 650, 652 (Mo.App. 1996). This narrow exception does not apply if the issue "is likely to be present in a future live controversy practically capable of review." *County of Jackson,* 985 S.W.2d at 403.

Aquila does not dispute that the appeal pertains to a question of general public interest or importance. All parties agree that the issues raised in this appeal will likely be raised again. The question, then, is whether the issue "will otherwise evade appellate review" if we do not exercise our discretion to review it in this case. We believe that it will.

The issue, in a nutshell, is whether the PSC, by refusing to grant a stay of the effectiveness of its decision, and by delaying its ruling on an application for rehearing, can lawfully, under the Missouri Constitution, deprive utility customers of their property without any hope of refund in the event of an ultimate reversal of the PSC decision. Even though the Consumers filed another petition for writ of review *after* the denial of the application for rehearing, the discrete issue presented here, but not by the later petition, is the avail-

ability of judicial review while an application for rehearing remains pending before the PSC. This is an issue that is subject to repetition while evading review. Because the statutes require a party to file an application for rehearing, and the PSC to rule on it, before that party can seek review by the circuit court, no case involving this particular issue will ever be ripe for judicial review unless we grant review under the "capable of repetition, yet evading review" exception. For these reasons, we exercise our discretion to examine the issue. The motion to dismiss is denied.

### Standard of Review

We are in this case reviewing the actions of the circuit court, not the merits of the decision of the PSC. As in any court-tried case, our standard of review is dictated by *Murphy v. Carron*, and our focus, in this case, is on whether the trial court erroneously declared or applied the law. 536 S.W.2d 30, 32 (Mo.banc 1976). Whenever it appears, by suggestion of the parties or otherwise, that the court is without jurisdiction, dismissal for lack of subject matter jurisdiction is proper. *Powell v. State Farm Mut. Auto. Ins. Co.*, 245 S.W.3d 864, 865 (Mo.App.2008) (*citing* Rule 55.27(g)(3)). Where, as here, the facts are uncontested, a question as to the court's subject matter jurisdiction is purely a question of law, which we review *de novo*. *Id.*; *Parker v. City of Saint Joseph*, 167 S.W.3d 219, 221 (Mo.App.2005). Consequently, we review the ruling to determine whether the circuit court correctly applied the law. *City of Park Hills Mo. v. Pub. Serv. Comm'n*, 26 S.W.3d 401, 403 (Mo.App.2000).

### Discussion and Analysis

The Consumers raise three points of error with regard to the trial court's dismissal of their petition for judicial review. Because the points raised overlap, they will be discussed together.

### I. Arguments of the Parties

In their first point, the Consumers contend that the court erred in dismissing their petition, because the PSC's order was ripe for judicial review even though the PSC had not yet ruled on the application for rehearing, as required by statute. The Consumers say that the order became *de facto* "final" when the new, non-refundable rates went into effect. This is because, due to a bar on retroactive ratemaking, there is no means to recover any overcharges should the new rates eventually be found to be improper.

"Sections 386.500 and 386.510 govern procedures concerning applications for rehearing before the PSC and writs of review before the circuit court." *State ex rel. County of Jackson v. Pub. Serv. Comm'n*, 14 S.W.3d 99, 101 (Mo.App.2000). Section 386.500.1 provides that "[a]fter an order or decision has been made by the commission, [any of the parties] interested therein shall have the right to apply for a rehearing in respect to any matter determined therein[.]" Section 386.500.2 requires a party to file an application for rehearing with the PSC before seeking a writ of review in the circuit court. It states:

> No cause or action arising out of any order or decision of the commission shall accrue in any court to any corporation or the public counsel or person or public utility unless that party shall have made, before the effective date of such order or decision, application to the commission for a rehearing.

Section 386.500.2.

Section 386.510 provides that the circuit court cannot review a decision of the PSC unless the PSC has ruled on an

application for rehearing. It states in relevant part:

> Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the circuit court ... for a writ of certiorari or review (herein referred to as a writ of review) for the purpose of having the reasonableness or lawfulness of the original order or decision or the order or decision on rehearing inquired into or determined.

Section 386.510. "The procedure provided for judicial review in section 386.510 is exclusive and jurisdictional." *State ex rel. AG Processing, Inc. v. Mo. Pub. Serv. Comm'n,* 120 S.W.3d 732, 735 (Mo.banc 2003).

Here, following the PSC Order of May 25, 2007, Public Counsel and Aquila filed an application for rehearing as to the May 17 Report and Order concerning the tariffs. On May 30, the Consumers, who had earlier filed an application for rehearing on the Report and Order, filed an application for rehearing as to the May 25 Order. The Consumers also filed an application for a stay of the effectiveness of the new rates, which were to take effect on May 31. The PSC did not act on any of those applications, and on May 31, the new rates went into effect. On June 14, 2007, while the applications for rehearing were still pending, the Consumers filed a petition in circuit court for writ of review. After briefing and argument, the court dismissed the petition for lack of jurisdiction due to lack of finality, in that the applications for rehearing had not been ruled upon as required by the statute.

Section 386.510 provides that a petition for a writ of review may be filed within thirty days after the denial of an application for rehearing or, if the application is granted, within thirty days after rendition of the subsequent decision. Section 386.500.1 states that if a rehearing is granted, "[the matter] shall be determined by the commission within thirty days after the same shall be finally submitted." Chapter 386 does not specify how long the PSC may take before ruling on the application for rehearing. Our courts have held that a circuit court lacks authority to act on a petition for review until *after* the PSC has done so. *See, e.g., County of Jackson,* 14 S.W.3d at 102–03 (writ of review premature where a rehearing proceeding was still pending before the PSC). *See also State ex rel. Riverside Pipeline Co., L.P. v. Pub. Serv. Comm'n,* 165 S.W.3d 152, 155 (Mo.banc 2005) (observing that seeking a rehearing under section 386.500.1 is a "threshold requirement" for filing a petition for writ of review and that judicial review is then governed by section 386.510, which requires the denial of rehearing as a prerequisite).

The Consumers argue that these statutory requirements, in a case such as this, are in conflict with the directives of article V, section 18, of the Missouri Constitution, which guarantees judicial review of *final* administrative decisions. It states in relevant part:

> All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, *shall be subject to direct review* by the courts *as provided by law;* and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence....

Mo. CONST., art. 5, sec. 18 (emphasis added). The Consumers contend that an interpretation of section 386.510 as requiring

an "express ruling" on an application for rehearing before seeking judicial review conflicts with the constitutional mandate of direct judicial review of a "final" decision.

Aquila points out that the constitutional provision says that final administrative decisions are subject to direct judicial review "as provided by law." Section 386.510, they say, sets forth the procedure for judicial review of the PSC's final decisions and, thus, provides the law.

The Consumers say we must consider the PSC's order to be "final," because it went into effect before the applications for rehearing were ruled upon. They point out that the PSC allowed Aquila to charge the higher rates without any opportunity for the utility customers to ever get a refund, because the PSC cannot engage in "retroactive ratemaking." *See State ex rel. Util. Consumers' Council of Mo., Inc. v. Pub. Serv. Comm'n*, 585 S.W.2d 41, 58 (Mo.banc 1979) (the commission may not redetermine rates already established and paid without depriving the utility of its property without due process). Therefore, the funds collected by Aquila remain the funds of Aquila and cannot be refunded.

It should be noted also that the prohibition against "retroactive ratemaking" can work either against the utilities or against the utility consumers (in the short run). For instance, if the PSC sets prospective rates at a level which, due to unexpected utility costs, is of such a level as to deprive the utility of a fair and reasonable return on investments, neither the PSC nor the courts can force the utility consumers to disgorge the savings that they realized while the utility was taking a financial beating. It cuts both ways. The Consumers do not deny this fact. They simply want a new rate to be considered "final" when it goes into effect.

■ "Finality" is found when an administrative agency "arrives at a terminal, complete resolution of the case before it." *See City of Park Hills*, 26 S.W.3d at 404. "An order lacks finality in this sense while it remains tentative, provisional, or contingent, subject to recall, revision or reconsideration by the issuing agency." *Id.* The Consumers acknowledge that the PSC's decision is technically considered provisional and contingent until the applications for rehearing are denied. They say, though, that it still has a *de facto* finality, and we must recognize that the constitution trumps the statutory requirements.

Respondents Aquila and Union Electric liken this case to *County of Jackson*, 14 S.W.3d 99. There, several aggrieved parties petitioned for a writ of review, seeking to prohibit the PSC from proceeding with a rehearing after the PSC denied all but one of the petitioners' applications for rehearing. *Id.* at 100–01. The circuit court issued a writ of prohibition, and the PSC and the petitioner who was granted rehearing appealed. *Id.* at 101. This court held that the writ of review was premature, and, thus, the petitions should have been dismissed. *Id.* at 102–03. Most pertinent to this case, the court rejected the respondents' urging to "construe section 386.510 in a way that would permit the circuit court to take a matter away from the PSC before the PSC could take any steps to correct its earlier action." *Id.* at 102.

In Point II, the Consumers contend that any interpretation of section 386.510 that requires the PSC to *expressly* deny the applications for rehearing conflicts with case law that prohibits an "intervening level of review" between a final decision of an administrative agency and review by a court.

■ The Consumers point to *Asbury v. Lombardi*, 846 S.W.2d 196, 200 (Mo.banc 1993), in which the Supreme Court men-

tioned that under article V, section 18, an agency may perform adjudicative functions without violating the constitutional separation of powers (article II, section 1), as long as the agency's decision is subject to "direct review by the courts." The court said that "direct" means without an intervening agency or step. *Id.* at 201. Therefore, if an agency decision is final, it must be "immediately" reviewable without an intervening level of agency review. *Id.* At issue in *Asbury* was a grievance procedure in the State Personnel Law that permitted aggrieved state employees to appeal final decisions of the Personnel Advisory Board (PAB) to *either* the Administrative Hearing Commission (AHC) or the circuit court, but not both. *Id.* at 199. The Court held that by imposing administrative review by the AHC between the final decision of the PAB and the circuit court, the statute precluded "direct review" and violated article V, section 18, as well as article II, section 1. *Id.* at 202.

The Consumers argue that the intervening step in this case does not take place between the PSC and circuit court, but instead involves an additional step *at the PSC.* They say that, here, the intervening step is the requiring of an *expressed* denial of an application for rehearing.

The Respondents contend that requiring a ruling on the application for rehearing is not an "intervening step" between a *final* decision of the PSC and direct, immediate review by the circuit court, because there has been no final decision of the PSC. They say that this order lacks finality, because "it remains tentative, provisional, or contingent, subject to recall, revision or reconsideration by the issuing agency." *See City of Park Hills,* 26 S.W.3d at 404.

■ In a footnote, the Consumers point to the federal administrative procedure act (APA), which they say requires the agency either to designate the order as final and subject to immediate judicial review or to declare the order inoperative pending the ruling on the motion for reconsideration. *See* 5 U.S.C. sec. 704. They suggest that regarding the May 25 Order as final would be consistent with this federal procedure. In quoting the federal statute, the Consumers omit the introductory phrase: "Except as otherwise expressly required by statute...." Of course, the federal APA offers little guidance here, because section 386.510 is an example of a statute that "expressly requires" otherwise. The processing of an application for rehearing is not an "intervening level of review."

■ The Consumers' point III deals with what they interpret as exhaustion of administrative remedies provisions in sections 386.500.2 and 386.510. As explained, those provisions require a party to file an application for rehearing before the PSC, and for the PSC to rule on it, before seeking a writ of review in the circuit court. "Exhaustion of administrative remedies is generally required before a court may assume jurisdiction of a matter where a remedy is available through administrative procedures." *Premium Std. Farms, Inc. v. Lincoln Tp. of Putnam County,* 946 S.W.2d 234, 237 (Mo.banc 1997). The courts will *not* require further exhaustion of remedies through administrative process when no adequate administrative remedy is available. *Id.*

The Consumers contend that they could not exhaust their administrative remedies in this case, because the PSC is constitutionally barred from engaging in "retroactive ratemaking," and, thus, there is no adequate administrative remedy to address the improper collection of past overcharges. Here, the Consumers filed (1) an application for rehearing, (2) a motion to stay the effectiveness of the rates, and (3) a request for hearing on their motion to

stay. The Consumers say that this was all they could do. They say that any remedy obtainable from the PSC on rehearing is necessarily inadequate, because the PSC cannot return any funds to them that have already been paid to Aquila pursuant to the new increased rates since it is unable to grant *retroactive* relief.

The PSC, in responding to the foregoing, points out that the application for rehearing provision is not considered an "administrative remedy." Rather, they say, it is a statutory prerequisite to judicial review, with which the Consumers have not complied. In response to the Consumers' complaints about the delay in ruling on the applications for rehearing, the PSC notes that though it took forty-eight days to rule (measured from the first application on May 23 until all rehearing applications were denied on July 10), the PSC was prohibited by the circuit court order from acting for fourteen of those days, from June 14 to June 28. Thus, deducting the fourteen days, the number of days that the applications for rehearing pended was thirty-four days. The PSC contends that it is not an extremely onerous period of time for a ruling on a motion for rehearing. This court is not equipped to say in this case whether that is unduly and unreasonably long. We note, however, that because of the early effectiveness of the new rates, the new rates were in effect for close to thirty days (even excluding the fourteen day stop-period) before the application for rehearing was denied and judicial review could even be sought.

The PSC points out that, had the Consumers been diligent after the denial of rehearing, they could have filed their petition for writ of review earlier, because they could have filed as early as July 11, 2007. They did not file their second petition until August 8, 2007. They also could have, as early as July 11, posted a bond and asked the court to require that Aquila pay the disputed part of the rates into the registry of the court, pursuant to section 386.520. Had the court found it appropriate to do so, any funds impounded after that point would, thus, have been preserved. The Consumers have never pursued their rights under section 386.520. Thus, says the PSC, the Consumers should be denied relief because they have not done even what they could have done to try to protect against the implementation of rates that might later be determined to be excessive.

## II. Analysis

 The argument of the Consumers is that the PSC ruling must be deemed *final* at whatever point new rates go into effect, even though the applications for rehearing are still pending at such time. This argument keys off of the fact that there is no "retroactive rate making" permitted, which means that if the PSC rushes new rates into effect, the utility customers cannot later recoup those increased rates if the PSC determines that it erred in its initial decision.

 Although the Consumers do not make either a due process or a takings argument, their claims on appeal are somewhat akin to the due process argument that a party might make if there were no reasonable provision for staying the execution of a civil judgment while appealing the judgment. Of course, like a court judgment, the initial adjudicatory ruling is presumptively correct. *See Util. Consumers' Council*, 585 S.W.2d at 47 (Commission's order "has a presumption of validity"); *Chastain*, 968 S.W.2d at 243 (trial court judgments are viewed as presumptively correct on appeal). The only thing constitutionally required in such a scenario would be a *reasonable* opportunity to stay the ruling or the judgment in

light of the applicable circumstances. *See* U.S. CONST. amend. XIV, sec. 1; MO. CONST. art. I, sec. 10 (due process clauses of U.S. and Missouri Constitutions). One could argue that the inability to later recover excessive charges under a PSC order might make a stay necessary to avoid "irreparable injury." *See PoPeople, Inc. v. Labor & Indus. Relations Comm'n*, 830 S.W.2d 403, 409–10 (Mo.banc 1992) (no risk of "irreparable injury" where the L.I.R.C. denied a stay without a hearing under section 536.120, where the court noted that there, unlike this case, the money could later be refunded). However, the general rule is that "[i]njuries in terms of money, time, and energy necessarily expended in the absence of a stay" do not constitute "irreparable injury" for purposes of determining whether the effective date of an administrative decision must be stayed. 73A C.J.S. *Publ. Admin. L. & Proc.* section 344 (2004). Thus, we assume that more must be shown than the mere fact that some new rates might be in effect for thirty days or so before judicial review could be applied for. Because constitutional concerns are not raised by the Consumers, and because we are not reviewing a circuit court stay granted (to avoid "irreparable injury" under section 386.520.1), we decline to speculate in that regard.

█ The PSC has discretion to set the effective date of its rate making decisions. Section 393.140(11). Here, we are not provided information as to the actual rate differential for the average utility customer. Nor do we know the host of other considerations that were before the PSC at the time it set the effective date. Regardless of the considerations, however, the PSC must allow sufficient time before a decision becomes effective for an affected party to be able to file an application for rehearing. *State ex rel. Office of Public Counsel v. Pub. Service Comm'n*, 236 S.W.3d 632, 636–37 (Mo.banc 2007). Thus, the PSC *must* delay implementation of new rates long enough to allow such applications to be filed. *Id.*

The language of section 386.500.2 (requiring the application for rehearing to be filed *before* the effective date of the order) causes us to believe that the General Assembly wished to allow the PSC an opportunity to review any applications for rehearing before new rates are implemented so that the PSC can determine whether there was anything it had overlooked or misinterpreted. The timing requirement also tends to show a legislative desire for expedition in the resolution of issues about the new order. *See* section 386.500.2.

With that in mind, it seems somewhat odd that the General Assembly specified no deadline for the PSC's ruling on applications for rehearing. We see no reason to believe that the General Assembly was casual in attitude about allowing new rates to be effective for an extended period of time before an affected party could seek judicial review of the decision. Perhaps the lack of a deadline for ruling on applications for rehearing was a legislative oversight; or perhaps the legislature chose not to arbitrarily bind the discretion of the members of the PSC in its effort to appropriately balance all of the interests affected, and to proceed with reasonable dispatch in the applicable circumstances. The legislature is aware that the courts remain available for writ purposes where there is a clear violation of statutory duty through an abuse of discretion. *See, e.g., Public Counsel*, 236 S.W.3d at 636–37.

Section 393.150 permits the PSC to suspend implementation of new rates when it deems it appropriate to do so. Other provisions allowing for the PSC and the court to stay or suspend the effective date of new rates can be found in Chapter 386. Section 386.500.3 permits the PSC to stay

the effect of an order during the pendency of an application for rehearing. Section 386.520.1, as we have noted, authorizes a circuit court in which a petition for writ of review has been properly filed, to stay or suspend the operation of the PSC's decision if it finds, after hearing, that "great or irreparable damage would otherwise result," and provided an appropriate bond is filed to secure the payment of damages due to an improperly issued stay order.

■ There is no showing here that the PSC has developed a pattern or practice of trying to evade short-term judicial review of its rulings. Nor is there any argument here that its decision to quickly implement the new rates (and to deny a stay pending consideration of rehearing) was an abuse of discretion. And while retroactive rate making is prohibited, certainly prospective rate making can consider the effect of monies received by utilities due to prior erroneous rulings. *See Util. Consumers' Council,* 585 S.W.2d at 58. The Court in *Utility Consumers' Council,* explained that the PSC, in determining rates under section 393.270, "may consider past excess recovery insofar as this is relevant to its determination of what rate is necessary to provide a just and reasonable return in the future, and so avoid further excess recovery." *Id.; see* section 393.270.4 (PSC "may consider all facts which in its judgment have any bearing upon a proper determination of [the setting of rates] with due regard, *among other things,* to a reasonable average return").

Although the broad discretion granted the PSC as to the timing of its rulings may at times be a source of frustration to the various parties, we cannot say that the constitutional and statutory framework currently in existence has been shown to have the effect in this case of violating the Consumers' rights.

■ The Courts may intervene to enforce implied or express statutory or constitutional rights. *See, e.g., Office of Pub. Counsel,* 236 S.W.3d at 635–36 (mandamus appropriate where the PSC allowed only one hour and twenty minutes in which to file application for rehearing before the new rates became effective). There is no authority for this court in this case to accept the invitation to construe the concept of a "final" decision as including the concept of finality desired by the Consumers.

Because the Consumers did not demonstrate to the circuit court that judicial review was prematurely authorized by law, we discern no error by the circuit court. The remedy the Consumers implicitly seek—a change in the statutory framework—is not for our determination on this record. It remains subject to the legislative judgment.

We hold that the circuit court did not err in dismissing the first petition for judicial review.

### Conclusion

For the foregoing reasons, the judgment is affirmed.

All concur.