929 S.W.2d 768 (1996)
STATE ex rel. MISSOURI CABLE TELECOMMUNICATIONS ASS'N, et al., MCI Telecommunications, Inc., AT&T Communications of the Southwest, Inc., and Midwest Independent Coin Payphone Ass'n, Appellants-Respondents,
v.
MISSOURI PUBLIC SERVICE COMMISSION, and Southwestern Bell Telephone Co., Respondents-Appellants.
No. WD 51798.
Missouri Court of Appeals, Western District.
July 2, 1996.
Motion for Rehearing and/or Transfer Denied August 27, 1996.
Application to Transfer Denied October 22, 1996.
*769 Jeremiah D. Finnegan, Kansas City, for Appellant/Respondent MO Cable Telecommunications Ass'n.
Leland B. Curtis, Clayton, for Appellant/Respondent MCI.
Paul DeFord, Kansas City, for Appellant/Respondent AT&T.
Willard C. Reine, Jefferson City, for Appellant/Respondent Midwest Indep. Coin Payphone.
Robert J. Hack, Jefferson City, for Respondent/Appellant MO Pub. Serv. Comm'n.
Paul Gerard Lane, St. Louis, for Respondent/Appellant SW Bell Telephone.
Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied August 27, 1996.
EDWIN H. SMITH, Presiding Judge.
This is an appeal from the trial court's order declaring the settlement agreement entered into between the Missouri Public Service Commission ("PSC") and Southwestern Bell Telephone Company ("SWBT") to be unlawful. Appellants, Missouri Cable Telecommunications Corporation ("MCTA"), MCI Telecommunications Corporation ("MCI"), AT & T Communications of the Southwest, Inc. ("AT&T"), and Midwest Independent Coin Payphone Association ("MICPA"), as intervenors, filed a petition requesting the circuit court to review the settlement agreement. Although the appellants prevailed before the circuit court, because we review the decision of the PSC and not the decision of the circuit court, Rule 84.05(e) mandates that the party aggrieved by the agency decision be denominated as the appellant and the *770 party prevailing before the agency be denominated as the respondent.[1]

FACTS
Part of the following factual account is quoted, with minor changes, from this court's opinion in the related case of State ex rel. Missouri Cable Television Association v. Missouri Public Service Commission, 917 S.W.2d 650 (Mo.App.1996).
In 1990, the Commission approved an experimental incentive regulation plan for SWBT. The plan was to last for three years and included a revenue sharing grid based upon SWBT's return on equity each year. Earnings above 14.1% would be shared with SWBT customers by way of a credit on customers' bills. As part of this agreement, reports were filed concerning the success of the plan in 1992. A date was set to consider future plans to be implemented. The plan under which SWBT began operating in 1990 was then extended to January of 1994 to avoid a lapse while a new plan was developed. In 1993, two cases filed with the PSC were consolidated and heard before the PSC which reviewed SWBT's rate of return and attempted to devise an alternative regulation plan. Appellants here were granted intervention in the consolidated proceeding. After hearings, the PSC issued its report and order in which it ordered SWBT to reduce its rates by $84.6 million and to set a date by which it could accept the PSC's proposed Accelerated Modernization Plan ("AMP").
The plan offered SWBT by the Commission would have operated during a five-year period of time, ending in 1998, in which SWBT would have agreed to forgo any general rate increase or specific increases to basic local service rates. During this time, SWBT's return on equity would be calculated each year and compared to a grid set forth in the PSC order to determine if SWBT's customers were entitled to share the company's earnings. If entitled, customers would receive a credit on their bills. SWBT would be required to begin a project to modernize its statewide telecommunications network.
SWBT declined to accept the AMP proposed by the Commission. After the Commission denied all applications for rehearing, review was requested in the Cole County Circuit Court by SWBT, as well as AT&T and MCTA. The circuit court consolidated the requests for review. The circuit court issued its order on December 30, 1994, affirming the PSC's Report and Order and ruled that the question of lawfulness of the AMP was moot because SWBT had rejected the plan leaving no controversy to decide. This court upheld the holding that the issue was moot.
While the consolidated case was pending before the circuit court, SWBT, Office of the Public Counsel, and the PSC entered into a settlement agreement to resolve the disputes then before the circuit court. While the effect of the settlement agreement is disputed, it was intended as an alternative regulation plan. The agreement contained a provision requiring SWBT to modernize its statewide network in a manner similar to the provisions of the order of the PSC. The agreement provided that the PSC would not investigate the earnings of SWBT for five years. It also approved a $15 million rate increase for SWBT. In return, SWBT agreed not to initiate or support legislation which would limit the jurisdiction of the PSC. The settlement agreement was conditioned on approval of an increase in tariff revenues.
Appellants had no input to the settlement agreement and were not made parties to it. After entering into the settlement agreement, respondents dismissed the petition for review in the circuit court. Appellants MCTA, MCI and AT&T filed applications for rehearing with the PSC, which were rejected. These parties then filed petitions for writ of review with the circuit court. The circuit court issued the writs and consolidated the cases. Appellant MICPA intervened in the consolidated proceeding. The circuit court *771 held the settlement agreement to be illegal and unenforceable because it violated the constitutional prohibition against surrendering the police power of the state, was entered in violation of all constitutional, statutory and regulatory requirements for an administrative agency, and violated the duty of the PSC to fix reasonable rates based on an appropriate rate of return. Respondents filed the notice of appeal, though as previously noted, the parties' roles are reversed on appeal.

DISCUSSION
We must first address two procedural points raised by the respondents: first, that the case is moot; and second, that the case is not ripe for review. Respondents argue the case is moot due to passage by the Missouri General Assembly of Senate Bill 507 which would alter the PSC's regulation of SWBT's rates. If signed by the governor, they argue, the bill would render the challenge to the moratorium provision in the settlement agreement moot. "A case on appeal becomes moot when circumstances change so as to alter the position of the parties or subject matter so that the controversy ceases and a decision can grant no relief." State ex rel. Monsanto Co. v. Public Serv. Comm'n of MO., 716 S.W.2d 791, 793 (Mo. banc 1986). A decision by this court could grant relief and the position of the parties has not changed for three reasons. First, if signed, this law would not take effect immediately because there is no emergency provision. Thus, the rates as they presently exist could be affected by a decision of this court. Second, there are preconditions in the bill before the PSC's rate making authority is altered. Thus, the time frame in which the moratorium provision in the settlement agreement will be valid is uncertain, but will remain valid for some period of time after the bill takes effect. Third, although the moratorium provision is the primary aspect of the settlement agreement being challenged, it is not the only issue raised on appeal. We, therefore, conclude that this case will not be rendered moot by Senate Bill 507 becoming a law.
Respondents argue the case is not ripe for review because the appellants do not assert that grounds presently exist on which the PSC should file a rate complaint against SWBT. Therefore, they argue, the moratorium provision cannot be challenged unless the PSC has abused its discretion by failing to file a rate complaint. Appellants challenge the PSC's exercise of jurisdiction when it agreed to the moratorium provision and this is the issue we review. Respondents cite no direct authority on their ripeness argument, and we fail to see how a determination of whether the actions of an administrative body were within its jurisdiction would not be ripe for review. We conclude that this case is ripe for review.
Appellants raise several bases for declaring the settlement agreement unlawful and void ab initio. These bases include arguments that the PSC exceeded its statutory authority, i.e., its jurisdiction; violated due process; failed to join appellants as necessary parties to the settlement agreement; and, violated the constitutional prohibition against surrendering or abridging the police power of the state. The circuit court agreed with all of appellant's arguments, however, we are reviewing the decision of the PSC, not the circuit court. We are also constrained by the rule that courts will avoid deciding constitutional questions if the case can be fully determined without reaching constitutional issues. State ex rel. Union Elec. v. Public Serv. Comm'n, 687 S.W.2d 162, 165 (Mo. banc 1985). Appellants have raised all of these arguments on appeal, but in varying order in each of their respective briefs.[2]

I.
We must first deal with the arguments concerning the PSC's jurisdiction to enter into the settlement agreement, because *772 if it acted without jurisdiction, all further acts by it are void. Appellants assert that once the appeals were taken from the PSC's December 1993 report and order, exclusive jurisdiction vested in the circuit court where the appeals were filed; leaving the PSC without jurisdiction to alter or modify its order. Thus they conclude, because the settlement agreement was entered while the appeal was pending before the circuit court, the PSC acted without jurisdiction and the settlement agreement should accordingly be declared void and without effect. We agree.
To support this proposition, appellants rely on the case of State ex rel. Campbell Iron Company, et al. v. Public Service Commission, 317 Mo. 724, 296 S.W. 998 (banc 1927). In State ex rel. Campbell Iron Co., the PSC made an extension order concerning the rates it had set for SWBT after the writ of review was filed. Id. 296 S.W. at 1000. The extension order was essentially a modification of the PSC's previous order. The PSC was held to be without jurisdiction to enter a subsequent order after a writ of review had been filed. Id. at 1001. The court stated, "[o]n the issuance of a writ of review its jurisdiction to make further orders ceases...." Id.
In State ex rel. Kansas City v. Public Service Commission, et al., 360 Mo. 339, 228 S.W.2d 738 (1950), the Supreme Court faced a similar issue, except that the PSC had entered an entirely new order rather than simply a modification of an existing order as in State ex rel. Campbell Iron Co. The circuit court struck down the first order and remanded the case back to the PSC. Id. 228 S.W.2d at 740. The PSC then entered a second order, although a motion had been filed concerning the court's ruling on the first order. Id. The court concluded that the judgment was final and the motion was improper. Id. at 740-41. Since the court had remanded the case back to the PSC, it had the jurisdiction to enter the second order. Id. at 742-43.
Taking these two cases together, we can declare the proper rule in Missouri concerning the jurisdiction of the PSC when one of its orders has been challenged in the circuit court. If review of a PSC order is pending before a circuit court, the PSC may not enter a modified, extended or new order. However, if the judgment of the circuit court becomes final, the PSC regains its jurisdiction to act in a manner not inconsistent with the decision of the circuit court.
In this case, all parties concede that review of the PSC's order was pending before the circuit court. Hence, the PSC did not have the jurisdiction to change its order regarding SWBT. Appellants claim that the settlement agreement was either a modification of a prior order or an entirely new order. Respondents assert that the settlement agreement was not an order of the PSC as that term is used in §§ 386.500 and 386.510[3] and is, therefore, not reviewable. We must decide whether the true status of this settlement agreement constituted a reviewable order. We will begin this analysis by reviewing the statutes governing the PSC.
The PSC is a creature of statute and limited thereby. State ex rel. Util. Consumers Council v. P.S.C., 585 S.W.2d 41, 49 (Mo. banc 1979). It was created and established by § 386.040. The primary function of the PSC is the regulation of public utilities. § 386.250, RSMo Supp.1995; § 386.270; § 386.320; § 386.330; § 386.360. One such public utility regulated by the PSC is telecommunications, and in this case the company is SWBT. § 386.250(2), RSMo Supp.1995; ch. 392, et seq.
The statutory procedure for regulating telephone companies is set forth in chapters 386 and 392. These chapters also contain the actions which the PSC is authorized to engage in. "`[N]either convenience, expediency or necessity are proper matters for consideration in the determination of' whether or not an act of the commission is authorized by the statute, State ex rel. Kansas City v. Public Service Comm'n, 301 Mo. 179, 257 S.W. 462 (banc 1923)." State ex rel. Util. Consumers Council, 585 S.W.2d at 49. The PSC is "vested with and possessed of the powers and duties in this chapter specified, *773 and also all powers necessary or proper to enable it to carry out fully and effectually all the purposes of this chapter." § 386.040. In its December 17, 1993 Report and Order, the PSC addressed its authority to enter into alternative regulation plans. We need not address all alternative regulation plans, only the use of private settlement agreements. Neither chapter 386 nor chapter 392 contain explicit statutory authorization for the PSC to enter into settlement agreements with public utility companies. We need not decide that issue in this case and we will proceed as if the PSC may enter into settlement agreements.
The duties of the PSC are set forth in chapters 386 and 392. The PSC is charged with the general supervision of telephone corporations, such as SWBT, including supervision of its "compliance with all the provisions of law, orders and decisions of the commission...." § 386.320. Whenever a complaint is made against a telephone company to the PSC, such as was made here against SWBT, "it shall be its duty, within sixty days after final submission, to make and file an order either dismissing the petition or complaint or directing the public utility... complained of to satisfy the cause of complaint in whole or to the extent which the commission may specify and require." § 386.330.3. If the PSC is of the opinion after a hearing that a telephone company's rates are "unjust, unreasonable, unjustly discriminatory or unduly preferential or in any wise in violation of law," the PSC shall fix a reasonable rate by order. § 392.240.
In this case, the PSC exercised its duty of general supervision by filing a complaint against SWBT charging that its rates were excessive. After investigation and a hearing, it issued an order as mandated by § 386.330.3. This order gave SWBT the option of accepting or rejecting its Accelerated Modernization Plan ("AMP") approved in the order. SWBT rejected the AMP and requested review in the circuit court. Ultimately, to avoid the appeals process, and because the AMP had lapsed, the PSC entered into the settlement agreement in order to get SWBT's approval of its regulation plan.
By its very nature, a settlement agreement is a compromise by each party to the agreement of certain rights in order to gain what it did not have an established right to claim. See generally BLACK'S LAW DICTIONARY 67, 1372 (6th ed. 1990) (definitions of "agreement" and "settlement"). Here, SWBT gave up its right to have the PSC's order reviewed by the circuit court in order to gain a more favorable regulation plan. The PSC, on the other hand, gave up the right to enforce its order as prima facie lawful under § 386.270 in order to avoid the appellate review process.
Appellants claim that the settlement agreement constituted a separate order of the PSC regulating SWBT. The PSC asserts that the settlement agreement was a non-binding expression of the parties' intent and only served to implement its previous order, not to constitute a separate order. The PSC's claim is contrary to the apparent belief of SWBT as expressed in its brief, as well as contrary to the express terms of the settlement agreement. The last paragraph of the agreement states that the parties "trust[ ] and expect[ ] compliance with its spirit and terms" and provides the PSC with the authority to determine whether the agreement has been violated absent a final judicial decision to the contrary. The PSC essentially incorporated its powers under § 386.320 to determine SWBT's compliance with its orders into the settlement agreement. The PSC attempts to argue out of both sides of its administrative mouth; on one hand saying it is not a reviewable order, and on the other hand treating it in almost all respects as an order. Thus, we find that both respondents intended the settlement agreement to be binding and contemplated judicial review thereof should a problem arise.
Respondents' defense is that this settlement agreement is no different than any other settlement of litigation. Due to the nature of this settlement agreement, we find that it differs in many respects from the traditional settlement agreement. This settlement agreement more closely resembles an order or decision of the PSC because it replaced another regulatory plan and operates *774 as the only regulation of SWBT put in place by the PSC. Even if no distinction could be drawn, the argument still fails. Missouri courts generally treat settlement agreements as contracts and we find no reason to view this settlement agreement any differently. See Daily v. Daily, 912 S.W.2d 110, 114 (Mo.App.1995); Ayotte v. Pillsbury Co., 871 S.W.2d 139, 142 (Mo.App.1994); Park Lane Med. Ctr. v. Blue Cross/Blue Shield, 809 S.W.2d 721, 724 (Mo.App.1991). If the settlement agreement is a contract, then it is binding. If it is binding, the provisions of this settlement agreement, some being regulatory in nature, have the effect of operating as a regulatory plan. If it has the effect of a regulatory plan, then there are no practical differences between the settlement agreement here and the usual order or decision entered by the PSC after a public hearing. If it is an order, then it is reviewable by this court.
We find the settlement agreement constituted an order or decision of the PSC regarding the regulation of SWBT, and essentially restored its role as adjudicator. Because the AMP had lapsed, the settlement agreement constituted the only regulation plan in effect at the time. And, because the appeal was pending before the circuit court when the settlement agreement was entered into, we find that the PSC lacked the jurisdiction to sign the settlement agreement outside the court proceedings. See State ex rel. Campbell Iron Co., 296 S.W. 998. The jurisdictional issue could have been removed had the PSC taken the settlement agreement to the circuit court for its approval after a hearing involving all of the parties. The settlement agreement, as promulgated here, permitted the PSC to make its decision privately as opposed to openly and with the input of the intervenors. This would violate what appears to us to be one of the purposes behind vesting exclusive jurisdiction in the circuit court while review is pending, which is to ensure that those interested in the outcome of the case as intervenors have a forum to be heard.

CONCLUSION
It is not this court's job to tell the PSC how to regulate SWBT or what methods are best to use. However, we must ensure the PSC properly exercises its jurisdiction. In this case, the PSC, employing a settlement agreement, attempted to avoid judicial review of its actions and at the same time put in place a plan regulating SWBT. By entering into the settlement agreement, we find that the PSC essentially entered a new order. We further hold that it was without jurisdiction to do so as exclusive jurisdiction was vested in the circuit court at that time. State ex rel. Campbell Iron Co., 296 S.W. 998; State ex rel. Kansas City, 360 Mo. 339, 228 S.W.2d 738 (1950). In this case, the jurisdictional issue serves the purpose of keeping the regulatory process out in the open, similar to the purpose of Missouri's Sunshine Law.
Judgment affirmed.
All concur.
NOTES
[1] Procedurally, we are treating the settlement agreement as an order of the PSC by choosing to review the agreement and by how we denominate the parties as appellant and respondent on appeal. Although we must make this procedural decision so that we may review the circumstances of this case, we will make the substantive decision as to whether this settlement agreement actually constitutes an order of the PSC after reviewing the merits of each party's argument.
[2] Before beginning discussion of the substantive legal issues raised by the parties, we note that arguably appellants could have raised a Missouri Sunshine Law violation by the PSC given the manner in which they conducted the entire affair, i.e., the discussions, meeting, and drafting, which resulted in the signing of the settlement agreement. As the issue was not raised by the parties and the 6-month statute of limitations found in § 610.027.4 has run, we will not address this issue.
[3] All statutory references are to RSMo 1994, unless otherwise stated.