**In the Matter of the Determination of Carrying Costs for the Phase–In Tariffs of KCP & L GREATER MISSOURI OPERATIONS COMPANY**

**AG Processing Inc., Appellant,**

v.

**Missouri Public Service Commission and KCP & L Greater Missouri Operations Company, Respondents.**

**No. WD 75437.**

Missouri Court of Appeals, Western District.

May 14, 2013.

As Modified June 25, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 25, 2013.

Application for Transfer Denied Oct. 1, 2013.

potential constitutional infirmities of

§ 386.520.2 for present purposes.

Jeremiah D. Finnegan and Stuart W. Conrad, Kansas City, MO, Attorneys for Appellant.

Jennifer Heintz, Jefferson City, MO, Attorney for Respondent Public Service Commission.

Karl Zobrist, Lisa A. Gilbreath, and Roger W. Steiner, Kansas City, MO, Attorneys for Respondent KCP & L Greater Missouri Operations Company.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, and THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges.

KAREN KING MITCHELL, Presiding Judge.

AG Processing Inc. (AGP) appeals an order approving tariffs (Tariff Approval Order) issued by the Public Service Commission (PSC) in Case File No. ER–2012–0024: *In the Matter of the Determination of Carrying Costs for the Phase–In Tariffs of KCP & L Greater Missouri Operations Company* (Carrying Costs Case). AGP argues that the tariffs, themselves, are unlawful and that the Tariff Approval Order is also unlawful and void, because: (1) the PSC lacked jurisdiction to issue the Tariff Approval Order due to existing writs of review filed in a related case, Case File No. ER–2010–0356: *In the Matter of the Application of KCP & L Operations Company for Approval to Make Certain Changes in its Charges for Electric Service* (Rate Change Case); (2) the PSC failed to give proper notice to the public in the affected area of the portion of a rate increase (approved in the Rate Change Case) made effective by the tariffs (approved in the Carrying Costs Case); (3) the PSC lacked authority, under section 393.155.1, to grant a phase-in rate increase that exceeded the amount requested by the utility for the affected area (approved in the Rate Change Case); (4) the PSC violated section 393.270.4 in ER–2012–0024, by failing to consider all relevant factors before granting a rate increase; and (5) the PSC's Tariff Approval Order was not supported by competent and sub-

stantial evidence in that there was no evidence to support an order approving the $7 million, phased-in portion of the rate increase plus carrying costs. We find that the PSC had jurisdiction and that all of the remaining claims raised by AGP were decided either in an order entered in another case already on appeal to this Court or in an order in this case from which AGP failed to appeal; thus none of these claims are properly preserved for appellate review in this case. Therefore, we affirm.

## Background

To properly understand the context of the present case, we begin with a brief discussion of the PSC's authority and procedures. The PSC was created and established to regulate public utilities that operate in Missouri. § 386.040; *State ex rel. Office of Pub. Counsel v. Mo. Pub. Serv. Comm'n*, 331 S.W.3d 677, 681 (Mo.App. W.D.2011). "The PSC is authorized to approve rate schedules for electrical corporations, typically during a general rate case, as long as the rate is just and reasonable both to the utility and to its customers." *Office of Pub. Counsel*, 331 S.W.3d at 681 (citing § 393.150).

Usually, a rate case begins when a utility files a schedule with the PSC, stating a new rate. § 393.150.1. The new rate schedule becomes effective automatically unless the PSC suspends it under section 393.150.1. When a proposed rate schedule is suspended pursuant to section 393.150.1, the PSC must provide notice to the affected parties, hold a full hearing, and consider all relevant factors before approving any new rate. *Office of Pub. Counsel*, 331 S.W.3d at 681.

After a new rate is approved, the utility publishes a proposed tariff sheet. *See*

*State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 276 S.W.3d 303, 305 (Mo. App. W.D.2008). " 'A tariff is a document which lists a public utility['s] services and the rates for those services.' " *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n*, 210 S.W.3d 330, 337 (Mo.App. W.D.2006) (quoting *Bauer v. Sw. Bell Tele. Co.*, 958 S.W.2d 568, 570 (Mo.App. E.D. 1997)). The PSC reviews the proposed tariff sheets to determine whether the proposed tariffs comply with the order approving the new rate. *See Mo. Gas Energy*, 210 S.W.3d at 337. Only after the PSC's review and approval do the proposed tariffs take effect. *See* 4 CSR 240–3.010(28).

"In the context of cases before the [PSC], the terms 'tariff' and 'rate schedule' are synonymous." *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 311 S.W.3d 361, 364 n. 3 (Mo.App. W.D.2010). In practice, it is common in a rate case for the PSC to approve a new rate in an initial report and order with findings of fact and conclusions of law, and then to issue one or more subsequent orders approving the proposed tariff sheets that implement the previously approved rate change. *See, e.g., State ex rel. Office of Pub. Counsel v. Pub. Serv. Comm'n*, 236 S.W.3d 632, 634–35 (Mo. banc 2007); *AG Processing, Inc.*, 276 S.W.3d at 305.

**A. Case File No. ER–2010–0356:** *In the Matter of the Application of KCP & L Operations Company for Approval to Make Certain Changes in its Charges for Electric Service* (Rate Change Case)

Before looking at the issues in the present case, we review the context in which they arose.[1] On June 4, 2010, KCP & L Greater Missouri Operations Company

---

1. A more detailed factual and procedural background of the appeal from the Rate

Change Case can be found in WD75038.

(KCP & L–GMO) filed proposed tariff sheets with the PSC and applied for a rate change in two rate districts: one consisting of parts of Kansas City, Lee's Summit, Sedalia, Warrensburg, and surrounding areas (MPS); and the other consisting of the area in and around St. Joseph (L & P). In response to the proposed tariff sheets, the PSC opened Case File No. ER–2010–0356: *In the Matter of the Application of KCP & L Operations Company for Approval to Make Certain Changes in its Charges for Electric Service.* AGP, an agricultural cooperative, intervened in the proceeding.[2] KCP & L–GMO initially proposed a $22.1 million annual rate increase for the L & P rate district and a $75.8 million annual rate increase for the MPS rate district, for a total proposed annual rate increase of $97.9 million. After conducting the necessary hearings, the PSC issued a report and order, adopting a general rate increase for electrical service for both the MPS and L & P rate districts. Inconsistent with KCP & L–GMO's request, however, the PSC adopted a $29.3 million rate increase for the L & P rate district—approximately $7 million more than the original request.[3]

In response to the PSC's report and order, AGP and KCP & L–GMO both filed timely applications for rehearing. Among other things, AGP challenged the grant of a rate increase in excess of the amount KCP & L–GMO initially requested for the L & P rate district. AGP also suggested that "another option may exist" under section 393.155.1, which "provides the Commission with the ability to phase-in large rate increases that [are] 'primarily due to an unusually large increase in the corporation's rate base.'" AGP suggested that the initial increase to L & P customers be $22.1 million, and that the additional $7 million be phased-in over a period of years.

Subsequently, the PSC issued an order of clarification and modification. In that order, the PSC found that, because the rate increase to the L & P rate district was "unusually large," the initial increase would be in the amount of $22.1 million, and, as suggested by AGP, the PSC ordered the additional $7 million to be phased-in, pursuant to section 393.155.1, in equal parts, over a period of two years. The PSC also modified the original report and order to allow KCP & L–GMO to recover carrying costs pursuant to section 393.155.1.[4] The order of clarification and modification rejected proposed tariffs previously filed by KCP & L–GMO and ordered it to file new tariff sheets in compliance with the report and order. In response, KCP & L–GMO filed additional tariff sheets to implement the phase-in, including carrying costs. AGP objected to the proposed carrying costs. AGP timely filed an application for rehearing of the order of clarification and modification. The PSC then issued an order approving tariffs for the initial increase ($22.1 million), but did not approve tariffs for the phase-in amount or estab-

2. AGP is a large manufacturer and processor of soybean meal, soy-related food products, and other grain products. AGP operates a major soybean processing facility in St. Joseph, Missouri, and thus uses a significant quantity of electrical energy provided by KCP & L–GMO in the L & P rate district.

3. Although the ordered increase to the L & P rate district was more than the amount requested, the combined rate increase for both the L & P and MPS rate districts was $59.4

million, which was $38.5 million less than KCP & L–GMO requested. As we discuss in our analysis, *infra*, several claims raised by AGP in this appeal are not properly before us, given that they relate to the underlying rate case on appeal in WD75038.

4. Carrying costs compensate a utility for revenues lost on the portion of a rate increase that is phased-in over time.

lish the carrying costs. The PSC decided that additional evidence was needed to determine carrying costs on the phase-in tariffs. AGP timely filed an application for rehearing of the order approving tariffs.[5]

Ultimately, the PSC issued an order denying all pending applications for rehearing, reconsideration, or clarification. AGP, KCP & L–GMO, and the Office of the Public Counsel (OPC) each filed petitions for writ of review with the Circuit Court of Cole County in the Rate Change Case, and the court ordered that the PSC take no further action in that case. AGP challenged the lawfulness and reasonableness of the PSC's original report and order, its order of clarification and modification, and its order approving tariffs. The orders appealed from in the Rate Change Case neither determined the carrying costs for the phase-in of the rate increase nor approved any tariff sheets related to the phase-in amount. The Circuit Court of Cole County affirmed the report and order in the Rate Change Case, finding it to be both lawful and reasonable. AGP, KCP & L–GMO, and OPC appealed the Cole County judgment to this Court.[6]

**B. Case File No. ER–2012–0024:** *In the Matter of the Determination of Carrying Costs for the Phase–In Tariffs of KCP & L Greater Missouri Operations Company* **(Carrying Costs Case)**

The PSC closed the Rate Change Case. Thereafter, on July 25, 2011, the PSC opened a new case, ER–2012–0024, to determine the carrying costs for the phase-in portion of the rate increase.[7] All parties to the Rate Change Case were made parties to the Carrying Costs Case, and the pleadings, tariffs, orders, and other documents in the Rate Change Case from May 27, 2011, forward, were copied to the new docket. The PSC granted a motion to suspend the procedural schedule, allowing time for settlement discussions. Subsequently, KCP & L–GMO and PSC Staff

---

5. The Office of the Public Counsel (OPC) also filed a timely application for rehearing of the order approving tariffs.

6. The appeals were consolidated in WD75038. In that appeal, AGP argued, among other things, that the PSC erred and exceeded its statutory authority in granting KCP & L–GMO a rate increase for the L & P rate district that exceeded KCP & L–GMO's requested amount by $7 million because notice of this additional amount was not given to customers in the affected rate district, and that the phase-in statute, section 393.155.1, does not grant the PSC authority to establish a phase-in that exceeds the requested amount of the rate increase. In a decision, also handed down today, this Court affirmed the increase as allocated by the PSC, holding that the PSC had the discretion to allocate the rate increase as it did and that the allocation was both reasonable and supported by the record. As to the lawfulness of the phase-in, this Court held that there was no error in the PSC's decision to order a phase-in of a portion of the increase to the L & P rate district, and, moreover, that any error argued by AGP was invited error as it was AGP that suggested a phase-in as a possible solution before it was ordered.

7. It is our understanding that the first two letters of a PSC case file number designate the type of utility involved and the nature of the case. For example, "ET" indicates that the case involves an electric tariff, while "ER" indicates that the case involves an electric rate. It appears that ET–2012–0017 was opened on July 22, 2012, before ER–2012–0024 was opened. Although an order closing ET–2012–0017 has not been cited to or found in the record, we presume that ET–2012–0017 was, in fact, closed. On page twenty-five of AGP's brief, it notes that the reason stated by the PSC for closing ET–2012–0017 was because "the Commission has determined that this matter should be classified as a rate case rather than a tariff case. Therefore, File No. ER–2012–0024 has been opened and will contain all filings that would have occurred in this file." There is no citation to a page in the record where this quoted language can be found.

filed a non-unanimous stipulation and agreement, recommending that the PSC approve carrying costs of 3.25% for KCP & L–GMO's phase-in tariffs. AGP filed an objection and requested a hearing. The PSC held a hearing to take additional evidence.

On March 7, 2012, the PSC issued a report and order (Report and Order) in the Carrying Costs Case, with an effective date of April 6, 2012. The Report and Order approved carrying costs at 3.25% per year. Additionally, the Report and Order affirmed that the PSC had the statutory authority to order a phase-in of the rate increase pursuant to section 393.155 and found that the PSC did not have to consider all relevant factors under section 393.270.4 in determining the carrying costs because those factors had been considered in the prior Rate Change Case that approved and ordered the phase-in. The Report and Order also overruled AGP's evidentiary objections, rejected the proposed tariff sheets previously filed by KCP & L–GMO, ordered KCP & L–GMO to file new tariff sheets that complied with the Report and Order, and denied all other pending motions and requests for relief.

On March 9, 2012, KCP & L–GMO filed new proposed tariff sheets, with an effective date on or after June 25, 2012, to implement the phase-in, including carrying costs. The PSC ordered that responses to the proposed tariffs be filed no later than March 19, 2012.[8] On March 19, 2012, PSC Staff filed a recommendation to approve the tariff sheets. AGP filed a response the same day, asserting that, because the Report and Order's effective date was April 6, 2012, it was "inappropriate and possibly unlawful" for the PSC to approve proposed

tariffs before that effective date and before considering any potential applications for rehearing of the Report and Order. AGP noted that it "intend[ed] to submit a timely application for rehearing."[9] Thereafter, on April 9, 2012, AGP filed a motion to suspend, or in the alternative, reject the tariffs, arguing that: (1) the tariffs were submitted pursuant to an erroneous interpretation of section 393.155.1; (2) the tariffs were not just and reasonable in that they applied beyond the time period addressed in the Rate Change Case; and (3) because of the time frame for implementation of the phase-in tariffs, the PSC had to consider all relevant factors and could not rely on the findings of a prior case. KCP & L–GMO opposed AGP's motion. No applications for rehearing of the Report and Order were filed before the April 6, 2012 effective date.

On May 9, 2012, the PSC issued the Tariff Approval Order, effective June 8, 2012, approving tariff sheets. In the order, the PSC recounted the procedural history of the Carrying Costs Case, noting that: (1) AGP indicated its intent to file an application for rehearing of the Report and Order, but failed to follow through with that intent; (2) AGP's April 9, 2012 motion to suspend or reject the tariffs was "nothing more than an untimely collateral attack on the Report and Order"; and (3) the issues raised in the motion had already been addressed in the Report and Order. The PSC then stated that it had reviewed the tariff sheets and found them compliant with the Report and Order. The PSC approved the tariff sheets, as amended by the substitute tariff sheets, with effective dates on and after June 25, 2012.

---

8. KCP & L–GMO filed substitute phase-in tariff sheets on March 14, 2012, amending some of the tariff sheets filed on March 9, 2012.

9. Any application for rehearing of the Report and Order would have been due before the April 6, 2012 effective date.

AGP filed a timely application for rehearing of the May 9, 2012 Tariff Approval Order. In the application for rehearing, AGP asserted that: (1) the PSC failed to consider all relevant factors in approving the phase-in tariffs, and therefore the tariffs and the Tariff Approval Order were unlawful and void; (2) the PSC failed to give proper notice of its action to ratepayers in the L & P rate district and, therefore, the order was unlawful and void; and (3) the Tariff Approval Order was not supported by competent and substantial evidence on the whole record and was therefore unreasonable.

On June 20, 2012, the PSC issued an order denying AGP's application for rehearing. This appeal follows.

## Standard of Review

■ Appellate review of PSC decisions and orders is governed by section 386.510. On review, the court determines whether the order is lawful and reasonable. *See State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n,* 344 S.W.3d 178, 184 (Mo. banc 2011). A PSC order is "prima facie lawful and reasonable until found otherwise...." § 386.270. The appellant bears the burden of proving, by clear and satisfactory evidence, "that the

order or decision of the PSC is unlawful or unreasonable." *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n,* 120 S.W.3d 732, 734 (Mo. banc 2003); § 386.430. We review the lawfulness of an order, i.e., "whether statutory authority for its issuance exists," de novo. *AG Processing, Inc.,* 120 S.W.3d at 734. We exercise independent judgment when determining the lawfulness of an order, and we "must correct erroneous interpretations of the law." *Office of Pub. Counsel,* 331 S.W.3d at 682.

■ A decision or order is reasonable when it is supported by competent and substantial evidence on the whole record, when it is not arbitrary or capricious, and where it is not an abuse of the PSC's discretion. *Praxair,* 344 S.W.3d at 184. The appellate court renders an "opinion either affirming or setting aside, in whole or in part, the order or decision of the commission under review." § 386.510. If reversed, the appellate "court may, in its discretion, remand any cause ... for further action." *Id.*

## Analysis [10]

■ AGP raises two points on appeal.[11] First, AGP claims that the PSC

---

**10.** Before we address the substantive issues raised by the parties, we feel compelled to note that this case may be moot. During the pendency of this appeal, we became aware of a report and order issued by the PSC on January 9, 2013, which supersedes both the rate increase and the phase-in approved in the Rate Change Case and, thus, also supersedes the carrying costs approved in the Carrying Costs Case. As a result, the tariffs that were the subject of the Tariff Approval Order at issue in this case have also been superseded.

"A case on appeal becomes moot when a change in circumstances so alters the position of the parties or subject matter that the controversy ceases to exist and a decision can grant no relief." *State ex rel. Mo. Gas Energy*

*v. Pub. Serv. Comm'n,* 224 S.W.3d 20, 24–25 (Mo.App. W.D.2007). "When the question presented seeks a judgment that would have no practical effect on an existing controversy, the matter is moot." *Id.* at 25. Thus, there must be an actual controversy for which this Court can grant effectual relief.

In the present case, although the issue of mootness was not addressed until requested by this Court, AGP asserted at oral argument that the issues in this case are not moot because section 386.520.2(1) mandates temporary rate adjustments and, in some cases, prospective rate adjustments, upon a judicial determination that a PSC order, involving the establishment of new rates or charges, is unlawful or unreasonable. Resolving the mootness issue as it relates to section 386.520 is a matter of first impression, and aside from

lacked jurisdiction to issue the order approving tariffs in that: (1) the filing of writs of review in the circuit court in the Rate Change Case divested the PSC of jurisdiction to take any further action pending resolution; (2) the artificial shifting of case numbers did not change the substance of the cause, which was to implement the unlawful phase-in approved in the Rate Change Case; and (3) the PSC lacked authority under section 393.155.1 to increase rates in excess of the amount requested by the utility or listed in the public notice. Therefore, AGP argues that the tariffs approved in the Carrying Costs Case are unlawful and that the order approving them is void.

In its second point, AGP claims that the PSC's Tariff Approval Order was not supported by competent and substantial evidence on the whole record in that there was no evidence to support an order approving a rate increase, in excess of KCP & L-GMO's initial request, plus carrying costs. AGP further argues that the order violated section 393.270.4 insofar as the PSC failed to consider all relevant factors before issuing the Tariff Approval Order.

■■ "Because the PSC 'is purely a creature of statute, [its] powers are limited to those conferred by [statute] either expressly, or by clear implication as neces-

sary to carry out the powers specifically granted.'" *Office of Pub. Counsel,* 331 S.W.3d at 682 (quoting *Util. Consumers' Council of Mo., Inc. v. Pub. Serv. Comm'n,* 585 S.W.2d 41, 49 (Mo. banc 1979)). "The PSC's authority and the procedures it follows are set out principally in chapter 386." *Praxair,* 344 S.W.3d at 184. Section 386.410.1 provides the PSC with the authority to adopt rules to govern its operations, and those rules are found in 4 CSR 240. *Id.* Additionally, "[t]o the extent that there are matters not addressed by the PSC statutes and administrative rules adopted by the PSC . . ., MAPA [the Missouri Administrative Procedure Act] 'operates to fill gaps not addressed within the PSC statutes.'" *Id.* (quoting *State ex rel. A & G Commercial Trucking v. Pub. Serv. Comm'n,* 168 S.W.3d 680, 682–83 (Mo.App. W.D.2005)).

**I. The PSC had jurisdiction over the Carrying Costs Case despite the filing of the Writs of Review in the Rate Change Case.**

AGP claims that the PSC lacked jurisdiction to issue the Tariff Approval Order in the Carrying Costs Case due to the pending writs of review filed in the Rate Change Case. AGP argues that the PSC closed the Rate Change Case and then opened the Carrying Costs Case "to try and implement the unlawful phase-in [ap-

AGP's argument that the issues are not moot because of this section, we have received no assistance from any of the parties in interpreting the statute as it relates to this case, or as it relates to PSC cases more broadly.

Section 386.520.2 provides that there shall be no stay but provides relief from "orders or decisions issued on and after July 1, 2011, that *involve the establishment of new rates or charges . . . .*" (Emphasis added.) Section 386.520.2(1) states that temporary rate adjustment, and in some cases even prospective rate adjustment, will be available "[i]n the event a final and unappealable judicial decision determines that a commission order or decision

unlawfully or unreasonably decided an issue or issues in a manner affecting rates. . . ." In order to, determine whether section 386.520 prevents this case from becoming moot, we would have to engage in statutory construction to determine whether an order that merely approves tariffs implementing a rate already approved in other orders "involve[s] the establishment of new rates or charges." *See* § 386.520.2. Because, as addressed in Section II, *supra,* AGP failed to preserve any issues for review by this Court, we need not resolve the mootness issue.

11. AGP's argument contains multiple subpoints and sub-subpoints.

proved in the Rate Change Case] ... and circumvent the writs of review." AGP alleges further that the PSC attempted to avoid the effect of the writs of review by "shifting the same substantive cause to a new case number and continuing proceedings in that new number ... and for all intents and purposes attempting to make over the subsequent case into a continuation, extension and implementation of the cause under judicial review." Stated simply, AGP argues that while the underlying order is on appeal, the PSC cannot take steps to implement that order through the approval of tariffs.[12] Finding no merit in any of AGP's arguments, we hold that the PSC had jurisdiction over the matters in the Carrying Costs Case.

**A. Courts have held that the filing of a Writ of Review deprives the PSC of jurisdiction to alter or modify the order on appeal.**

This Court has held that "[i]f review of a PSC order is pending before a circuit court, the PSC may not enter a modified, extended or new order." *State ex rel. Mo. Cable Telecomms. Ass'n v. Mo. Pub. Serv. Comm'n,* 929 S.W.2d 768, 772 (Mo.App. W.D.1996)(noting that it is only after the court's judgment becomes final that "the PSC regains its jurisdiction to act in a manner not inconsistent with the decision of the circuit court"). In *Missouri Cable Telecommunications Association,* a PSC report and order in a rate case reduced Southwestern Bell Telephone Company's (SWBT) rates by $84.6 million. *Id.* at 770. SWBT and various intervenors sought review of the report and order in the circuit court. *Id.* While that case was pending on review, SWBT, the OPC, and the PSC entered into a settlement agreement to resolve the disputes then before the circuit court. *Id.* Intervenors, who were not parties to the settlement, filed applications for rehearing with the PSC, and when those were rejected, they filed a writ of review with the circuit court, challenging the legality of the settlement. *Id.* On appeal, this Court held that the settlement agreement was illegal and unenforceable in that, once the appeals were taken from the PSC's original report and order, "the PSC [was] without jurisdiction to *alter or modify its order." Id.* at 772 (emphasis added). In other words, once "review of the PSC's order was pending before the circuit court[,] ... the PSC did not have the jurisdiction to change its order regarding SWBT." *Id.*

In arguing that the filing of the writs of review in the Rate Change Case divested the PSC of jurisdiction over the Carrying Costs Case, AGP relies on *State ex rel. Campbell Iron Co. v. Public Service Commission,* 317 Mo. 724, 296 S.W. 998 (1927), a case also relied upon by this Court in *Missouri Cable Telecommunications Association,* 929 S.W.2d at 772, discussed *supra.* In *Campbell Iron Co.,* the PSC

---

**12.** AGP does not argue that the PSC lacked the authority to bifurcate the approval of the rate increase and the phase-in from the approval of the carrying costs and implementing tariffs. In other words, AGP does not argue that a separate case cannot be opened for the purpose of approving carrying costs and implementing tariffs related to a rate change approved in an earlier case. Rather, AGP argues that this separate case cannot go forward once a writ of review is filed in the underlying rate case. This distinction is subtle, but not unimportant. The only issue before this Court is whether a separate case may proceed to implement a rate while the case approving the rate is subject to a writ of review, not whether the PSC could open a separate case on a related matter. As no one has raised the issue of whether rate approval and implementation must occur in one case, for purposes of this appeal, we will assume, without deciding, that the PSC can bifurcate the question of the appropriate rate (including whether the rate should be phased in) from the approval of carrying costs and tariffs implementing the rate increase.

granted a rate increase to SWBT, for a "trial period of thirteen months." 296 S.W. at 999. At the end of the trial period, the increased rate automatically expired without further action by the PSC. *Id.* While the PSC's original order was on appeal, the PSC granted two motions filed by SWBT to continue the increased rates beyond the automatic expiration date. *Id.* at 1000. In rejecting the PSC's attempt to modify the original order while it was pending on appeal, the Missouri Supreme Court held that, upon "issuance of a writ of review[, the PSC's] jurisdiction to make further orders ceases." *Id.* at 1001.[13]

These cases stand for the proposition that, once a writ of review is filed from an order of the PSC, "exclusive jurisdiction vest[s] in the circuit court where the appeal [is] filed; leaving the PSC without jurisdiction to *alter or modify its order.*" *Mo. Cable Telecomms. Ass'n,* 929 S.W.2d at 772 (emphasis added). The orders entered by the PSC in the Carrying Costs Case do not alter or modify the orders under review in the Rate Change Case; rather, they merely implement the orders in the Rate Change Case that approved a phase-in of $7 million of the approved increase and authorized carrying costs.

Further, the cases above are distinguishable because, unlike the present case, each dealt with a subsequent order entered by the PSC in the *same* administrative case that was, or was alleged to be, under review. *See, e.g., Mo. Cable Tele-*

*comms. Ass'n,* 929 S.W.2d at 771 (the parties attempted to enter into a settlement agreement in the underlying administrative action while it was under review by the circuit court); *Campbell Iron Co.,* 296 S.W. at 999–1000 (the PSC issued an order extending the length of the rate increase while the order granting the increase was under review); *State ex rel. Kansas City v. Pub. Serv. Comm'n,* 360 Mo. 339, 228 S.W.2d 738, 742 (1950) (the PSC entered a new order in the same case after it had been remanded by the circuit court back to the PSC). The writs of review, in this case, specifically stated that they applied only to the PSC's actions and decisions concerning the Rate Change Case. And the circuit court's order stated only that the PSC should "take no further action *in such cause* save compliance with the Writ of Review." (Emphasis added.)

**B. Statutes indicate that the PSC retains authority to implement a rate once it is established.**

 "Statutory construction is a matter of law ... [and] the primary rule is to ascertain the intent of the legislature from the language used, by considering the plain and ordinary meaning of the words used in the statute." *Office of Pub. Counsel,* 331 S.W.3d at 683; *see also State v. McLaughlin,* 265 S.W.3d 257, 267 (Mo. banc 2008) (noting that where there is no guidance from case law or other available authority on a statute's interpretation, the

---

13. AGP also relies on *State ex rel. Kansas City v. Public Service Commission,* 360 Mo. 339, 228 S.W.2d 738 (1950). In that case, a PSC report and order approving a rate increase for SWBT was reversed and set aside by the circuit court. *Id.* at 739. Upon remand by the circuit court, the PSC issued a second order, substantially similar to its previous order, except that it corrected the procedural defects that impaired the original order. *Id.* at 742. On appeal, after entry of the second order, the Missouri Supreme Court rejected

the argument that the PSC lacked jurisdiction to act upon remand because the circuit court failed to transmit its judgment to or lodge a certified copy of the judgment with the PSC. The Missouri Supreme Court held that, while such procedures might be desirable, they were not required by statute to revive the PSC's jurisdiction. *Id.* The holding in this case does not support AGP's contentions regarding the PSC's jurisdiction to issue orders in the Carrying Costs Case.

statutory language is the best guide for determining the intent of the legislature). "'Where the language of a statute is unambiguous and clear, this Court will give effect to the language as written, and will not engage in statutory construction.'" *Office of Pub. Counsel*, 331 S.W.3d at 683 (quoting *Dubinsky v. St. Louis Blues Hockey Club*, 229 S.W.3d 126, 130 (Mo. App. E.D.2007)). When determining the meaning of statutory language, the whole act must be taken into consideration, and the words of one section or statute must be read in the context of other statutes on the same subject as well as with cognate sections. *Id.* "We presume that the legislature intended that each word, clause, sentence, and provision of a statute have effect and should be given meaning." *Id.* at 684.

▮▮▮▮ Statutes addressing the PSC's authority indicate that the legislature intended PSC rate orders to remain in effect during the pendency of an appeal, absent a stay. Further, it is clear that, once a rate is approved, the PSC has the authority to implement the new rate. Finally, the PSC has express authority to phase in large rate increases, but once a phase-in is approved, the PSC must allow the electrical utility company to recover its carrying costs. Read together, these statutes indicate that the legislature intended to give the PSC the authority to implement an approved rate, including carrying costs, as long as the rate has not been stayed.

Section 386.490.2 states:

Every order or decision of the commission shall of its own force take effect and become operative thirty days after the service thereof, except as otherwise provided, and shall continue in force ... unless such order be unauthorized by this law or any other law or be in violation of a provision of the constitution of this state or of the United States.

All orders of the PSC are presumptively lawful and reasonable until found otherwise. § 386.270. Moreover, "[t]he pendency of an appeal under section 386.510 shall not of itself stay or suspend the operation of the order or decision of the [PSC]...." § 386.520.1; *see also State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 276 S.W.3d 303, 305–06 (Mo.App. W.D.2008) (noting that a "circuit court[ ] order for the PSC to 'take no further action' in the case did not have the effect of staying or suspending the rate increase itself").

Further, section 393.155.1 expressly provides that the PSC may, in its discretion, phase in certain large rate increases. But, if a phase-in is approved, the PSC must provide for carrying costs.

> If, *after hearing,* the commission determines that any electrical corporation should be allowed a total increase in revenue that is primarily due to an unusually large increase in the corporation's rate base, the commission, *in its discretion,* need not allow the full amount of such increase to take effect at one time, but *may instead phase in such increase* over a reasonable number of years. Any such phase-in *shall allow the electrical corporation to recover the revenue which would have been allowed in the absence of a phase-in* and *shall make a just and reasonable adjustment thereto* to reflect the fact that recovery of a part of such revenue is deferred to future years [carrying costs]. *In order to implement the phase-in, the commission may, in its discretion, approve tariff schedules which will take effect from time to time after the phase-in is initially approved.*

§ 393.155.1 (emphasis added).

▮▮▮ In the Rate Change Case, the PSC held hearings on KCP & L–GMO's underlying general rate increase request,

*after which,* pursuant to section 393.155.1, it determined that the rate increase to the L & P rate district was an "unusually large" increase, and, as such, a phase-in for a portion of the approved rate increase was appropriate and that carrying costs would be awarded. The general ratemaking order and the phase-in order issued by the PSC in the Rate Change Case are presumptively valid and reasonable until found otherwise. § 386.270. No party sought a stay of the underlying rate increase, and, therefore, the order granting the general rate increase and approving the phase-in remains presumptively lawful and reasonable pending the outcome of the appeal of the Rate Change Case (WD75038). § 386.520.1.[14]

■ Section 393.155.1 specifically directs that, if a phase-in is ordered, the electrical corporation *shall* be allowed to "recover the revenue which would have been allowed in the absence of a phase-in and shall make a just and reasonable adjustment thereto to reflect the fact that recovery of part of such revenue is deffered to future years," i.e., the electrical corporation shall determine carrying costs for the deferred revenue. And section 393.155.1 specifically contemplates implementation of the phase-in through approval of tariff schedules *after* the phase-in is initially approved. To find, as AGP suggests, that the PSC has no jurisdiction to approve tariffs implementing the phase-in and carrying costs because the underlying general ratemaking and phase-in orders are on appeal would result in the de facto stay or suspension of the phase-in and the carrying costs, a statutorily mandated element of the phase-in order, and we decline to make such a finding.[15] We conclude that the PSC retained jurisdiction both to determine the carrying costs applicable to the previously approved general rate increase and phase-in and to approve tariffs implementing the approved phase-in and carrying costs.

## II. The Application for Rehearing failed to preserve the issues raised by AGP on appeal.

■ The Report and Order in the Carrying Costs Case was issued on March 7, 2012, with an effective date of April 6,

---

14. The Petitions for Writ of Review in the Rate Change Case were filed in June 2011, when the previous version of section 386.520 was still in effect. That version of section 386.520 provided that the writ did not stay operation of the order, but allowed the circuit court discretion to grant a stay if the requesting party first executed and filed a bond with the circuit court. § 386.520.1, RSMo Cum. Supp.2010. Under the current version of section 386.520, for all orders or decisions, involving the establishment of new rates and charges, issued on or after July 1, 2011, a stay is no longer permitted. §§ 386.520.1–.2, RSMo Cum.Supp.2012; *see also supra* note 10.

15. By opening a new case, a situation has arisen where the same parties are appealing various orders in two appeals. This is not the best practice. We note that all of these issues could have been resolved in the Rate Change Case. Such an approach certainly would have been better practice. In the present case, we assume that the carrying costs issue was not resolved in the Rate Change Case because the decision to phase in a portion of the rate increase was made late in the case, additional evidence was needed to determine the amount of carrying costs, and taking additional evidence on that issue in the Rate Change Case would have delayed implementation of the portion of the rate increase ($22.1 million) not subject to phase-in. In the future, we encourage the PSC, whenever possible, to decide all issues related to a general rate increase, e.g., carrying costs, in the same case. Had that been done here, we would not have two pending appeals in our Court that are based on the same underlying general rate increase. It would be a better practice for all issues related to a general rate increase to be decided in the same case both at the PSC level and on appeal.

2012. The Report and Order approved annual carrying costs at 3.25% and ordered KCP & L–GMO to file tariff sheets that complied with the Report and Order. KCP & L–GMO timely filed new tariff sheets. No application for rehearing of the Report and Order was filed before the April 6, 2012 effective date. On April 9, 2012, AGP filed a motion to suspend, or in the alternative, reject the tariffs. On May 9, 2012, the PSC denied AGP's motion to suspend or reject the tariffs and issued the Tariff Approval Order, thereby approving the compliance tariff sheets filed by KCP & L–GMO. AGP filed a timely application for rehearing of the May 9, 2012 Tariff Approval Order. It is from the denial of that application for rehearing that AGP now appeals.[16] However, in this appeal, AGP makes no arguments regarding the reasonableness or lawfulness of the Tariff Approval Order. In other words, AGP does not argue that the approved tariffs fail to properly implement the report and order establishing new rates or charges. Instead, AGP attempts to use this appeal, from the denial of its Application for Rehearing of the Tariff Approval Order, as a vehicle to challenge the $7 million phase-in approved in the Rate Change Case (already on appeal in case number WD75038). We find that none of the substantive issues raised by AGP in this appeal were preserved by appealing the deni-al of the Application for Rehearing of the Tariff Approval Order. Issues related to the legality and reasonableness of new rates or charges must be raised in an appeal from the PSC's denial of an application for rehearing of the report and order that approved the new rates or charges being challenged.[17]

Section 386.510 is the exclusive method to obtain appellate review. "[A]n application for rehearing is required . . . and is a prerequisite to the filing of an appeal under section 386.510." § 386.515. Section 386.500.1 provides that "[a]fter an order or decision has been made by the commission . . . any corporation . . . interested therein shall have the right to apply for a rehearing *in respect to any matter determined therein. . . .*" (Emphasis added.) Section 386.500.2 further provides:

> No cause of action arising out of any order or decision of the commission shall accrue in any court to any corporation . . . unless that party shall have made, *before the effective date of such order or decision,* application to the commission for rehearing. Such application shall set forth specifically the ground or grounds on which the applicant considers said order or decision to be unlawful, unjust, or unreasonable. *The applicant shall not in any court urge or rely on any*

---

16. Both the PSC and KCP & L–GMO claim that the Tariff Approval Order was not a final appealable order, and that, therefore, we lack jurisdiction and should dismiss the appeal. Because, as discussed *infra,* we find that AGP failed to preserve the issues it raises in this appeal, we need not determine whether the Tariff Approval Order was final for the purposes of appeal.

17. In the present case, to the extent that AGP could have claimed that the $7 million phase-in was unlawful or unreasonable, that claim, even if properly preserved, would nevertheless be barred because the same issue was already appealed to this Court in WD75038. This bar on litigating the same claim against the same opponent in simultaneous appeals is based on the "goals of avoiding wasteful duplication and inconsistent judgments." *Kelly v. Kelly,* 245 S.W.3d 308, 314 (Mo.App. W.D. 2008) (discussing the principles of the abatement doctrine and the pending action doctrine). The goal of avoiding inconsistent judgments is not flexible. *Id.* at 315 ("It is axiomatic that inconsistent judgments cannot ordinarily exist together."). We cannot allow AGP to litigate in this case issues that were raised and resolved in WD75038.

*ground not so set forth in its application for rehearing.*

(Emphasis added.)

As the PSC and KCP & L–GMO correctly point out, and as we have already noted, AGP did not file a timely application for rehearing of the March 7, 2012 Report and Order; nor does AGP claim that this appeal is a challenge to that Report and Order. AGP filed an Application for Rehearing of the May 9, 2012 Tariff Approval Order. Consequently, that is the only order it may challenge in this appeal, and it may challenge matters determined only in that order. The May 9, 2012 Tariff Approval Order approved KCP & L-GMO's submitted tariff sheets, thereby implementing the $7 million phase-in (approved in the Rate Change Case) with the appropriate carrying costs (approved first in the Rate Change Case, with the amount (3.25%) approved in the Report and Order in the Carrying Costs Case). To the extent that the application for rehearing of the Tariff Approval Order raised issues that were decided in any order *other than* the May 9, 2012 Tariff Approval Order, including issues decided in the underlying Report and Order in the Carrying Costs Case and in any order or decision in the Rate Change Case, those issues are not properly raised in the Application for Rehearing because they were not determined in the Tariff Approval Order, and thus, are not properly preserved for review by this Court.

On appeal, AGP claims that the PSC acted unlawfully in that: (1) it failed to give proper notice to customers before it approved a rate increase greater than the amount requested by KCP & L–GMO (Point I.C.1 and .4); (2) it approved the phase-in of the $7 million increase despite

the fact that section 393.155.1 does not grant the PSC the authority to phase-in a rate increase in excess of the amount requested by the utility (Point I.C.2); and (3) the PSC approved a rate increase in excess of the amount requested by the utility in violation the utility's management prerogatives (Point I.C.3). AGP also claims that the PSC acted unreasonably in approving the $7 million rate increase, plus carrying costs, because that decision was not supported by competent and substantial evidence (Point II). None of these claims are properly preserved because these issues were not matters determined in the Tariff Approval Order and were, therefore, not appropriate bases for the Application for Rehearing of that order.[18] All of these claims address issues decided in the Rate Change Case, not in the present case, and, thus, are subject to review in WD75038, and were decided by the opinion issued by this Court in that case. The only issues decided in the case underlying this appeal—the Carrying Costs Case—were the appropriate amount of carrying costs for the phase-in, the lawfulness of the previously ordered phase-in, and the propriety of the submitted tariffs' implementation of the phase-in and carrying costs. We decline to review any claims that either were, or could have been, raised in WD75038. Nor can we reach issues decided in the Report and Order in this case (the amount of carrying costs and the legality of the phase-in) because no Application for Rehearing was filed as to that specific Report and Order.

The only issue raised in the Application for Rehearing of the Tariff Approval Order and in briefing to this Court that even

---

18. While the application for rehearing characterizes AGP's claims of error as relating to the PSC "approving a tariff" without considering relevant factors and giving proper notice to ratepayers, as well as issuing an "Order Approving Tariff" that was not supported by competent and substantial evidence, it is clear on appeal that these arguments do not actually relate to the May 9, 2012 Tariff Approval Order, but instead, they relate to the underlying report and order approving the rate increase in the Rate Change Case.

arguably addresses the propriety of that order, is the claim that the PSC did not consider relevant factors in issuing its May 9, 2012 Tariff Approval Order (Point II). AGP argues that because the Carrying Costs Case was designated as a rate case by the PSC, the PSC was obligated to consider factors such as financial analysis, rate of return on equity, capital structure, cash working capital, valuation of rate base, capital markets, and normal weather and customer growth before approving the tariff sheets that would implement the phase-in rate and carrying costs. AGP asserts that the failure to consider these factors violates section 393.270.4, which provides that:

> [i]n determining the *price* to be charged for ... electricity, ... the commission may consider all facts which in its judgment have any bearing upon a proper determination of the question ... with due regard ... to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies.

(Emphasis added.) This provision requires the PSC to consider only factors that, in its judgment, are determined to have any bearing upon the *price* of the commodity at issue. This provision has no application to the approval of a tariff that merely *implements* a rate already established. Therefore, we cannot find that the PSC acted unlawfully in failing to consider the factors, noted by AGP in its brief, in approving the tariffs implementing the

phased-in rate increase and applicable carrying costs, both of which were previously approved by the PSC.[19]

Therefore, because AGP attempts to challenge issues not decided in the May 9, 2012 Tariff Approval Order and because AGP has not complied with section 386.500, we find that AGP failed to properly preserve those issues for our review. In essence, AGP attempts to make claims regarding issues decided in a PSC order to which AGP made no application for rehearing (the March 7, 2012 Report and Order), and issues decided in PSC decisions and orders in another case (the Rate Change Case)—a case that has been separately appealed and not consolidated with this case. The statutes require that a party challenging an order of the PSC file a timely application for rehearing before the effective date of the challenged order. This procedure is designed to give the PSC the opportunity to consider alleged error and make modifications if necessary. We will not allow AGP to bypass these procedural requirements and use an application for rehearing of the final approval order in a rate case (an order implementing rates already approved) as a vehicle to challenge all decisions and orders in this case, as well as decisions and orders in related cases. All points are denied.

## Conclusion

The writs of review filed in the Rate Change Case do not deprive the PSC of jurisdiction over the Carrying Costs Case because, in the Carrying Costs Case, the

---

19. In its second point relied on, AGP claims that the order approving tariffs is not supported by competent and substantial evidence, i.e., it is unreasonable. Yet, in the argument portion of its brief, AGP does not address this claim. A claim that is not addressed or developed in the argument is abandoned. *See State v. Nichols,* 200 S.W.3d 115, 119 (Mo.App. W.D.2006) (finding a claim of severance to be abandoned when defendant "failed to offer any support in his argument section regarding" the claim). However, we note that an order approving tariffs is not the type of PSC order that contains findings of fact, an element essential to a review of reasonableness; therefore, generally, reasonableness is not a proper basis to challenge an order approving tariffs.

PSC did not modify or amend its orders in the Rate Change Case; instead, it merely implemented them. This Court will address only those issues properly preserved for appeal in a timely application for rehearing and briefed to this Court. AGP cannot raise issues in the present appeal that were not decided in the Tariff Approval Order, the only order from which AGP filed an application for rehearing. The PSC was not required to consider all relevant factors prior to entering the Tariff Approval Order in this case, as those factors were properly considered when the underlying price, or rate, was determined.

THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges, concur.